RueEin, Chief-Justice.
 

 The bill is filed by the surviving executor of the will of
 
 S. Outerbridgé,
 
 against thé next of kin, and some of the legatees of the testator and against the executrix of
 
 J. Maxwell,
 
 deceased, who was also one of the executors of
 
 Onterbridge.
 
 .The object of it is to have the construction of the will in several particulars settled and also to be directed a? to the principles upon which the complainant shall settle, with the representatives of his former co-executor, who in his life time transacted most of the business of the estate, and at the time of his death, had in his hands upwards of $60,000 belonging to it. It is a proper bill, as the points are all of them of some Consequence to those interested, and some of them of sufficient difficulty to authorise the plaintiff to ask the advice of the court.
 

 The will is exhibited and has no general residuary clause. The testator, nevertheless, left a'considerable undisposed residue, as some of the parties contend,to be divided amongst his next of
 
 kin;
 
 and as others contend, to be applied in satisfaction of pecuniary legacies. While questions are also made, whether certain parts of the property are specifically disposed of, or fall into the residue.
 

 The testator, by his will, gave to his daughter,
 
 Sarah
 
 
 *495
 
 j)./.
 
 Fenner,
 
 fifty shares of stock in the State Bank; nineteen in tiie Bank of Cape Fear, and seven in the Bank of Newbern, all which he owned at the date of his will, and of his death; on which he directs his executors to receive the dividends during the continuance of the charter and pay them to his daughter, and if the charters should not be renewed, then to transfer the shares to her. At his death, dividends had been declared on the Cape Fear Bank stock, to the amount of $228, which had not been paid to him, but stood to bis credit in the dividend book of the Bank ; this was also the case in the Bank of Newbern, to the amount of $56; and in the State Bank to the amount'of $800. Besides that sum thus declared, in the State Bank, and standing on the dividend book, the sum of $1354 55, which had been before declared as dividends of that stock, had been transferred by the testator to his personal credit on the individual ledger as a deposit. Those sums were received by Mr.
 
 Maxwell,
 
 and under the idea that they passed with the stock bequeathed to Mrs.
 
 Fenner,
 
 he paid the same, (in the whole $2,438 55) to her. One of the questions between the parties is, whether these sums did so pass, or are undisposed of ?
 

 Dividends upon stock due at the death of the testator do not pas3 the stocklteeif, °f
 

 It is very clear that the stock did not carry any part 0f (¡10 dividends in either Bank. As to the sum of $1354 55, that was no longer a dividend, it had been re-ccive<^ an(^ deposited again as cash, subject to the testator’s check in the common course of business. The remaining sums were not precisely in that state, but they had been severed from the stock by being declared.— They were not profits accruing, but had accrued, and no more would-pass then as apart of the stock, than a crop made on land and gathered, would, by a devise of tiie land. Upon a transfer of the stock to a purchaser, dividends declared do not follow, unless bargained for, and then the purchaser gets them in the name of his vendor. But the particular words of this will positively exclude the idea, for the executors arc directed to receive the dividends as they shall become due, and payable for Mrs.
 
 F,
 
 These sums, were therefore improperly paid toiler under
 
 *496
 
 a mistake, and she must account for them ; and, in the event of her inability to do so, Mr.
 
 Maxwell’s
 
 estate will be obliged to make them good, to the persons enti-tied to tlie benefit of the residue in the settlement of the estate.
 

 wo^ga tiis notes,” include judgments upon eitller'
 

 At the death of the testator, he had obtained judgment on a bond given to him by
 
 B. T. Hawkins,
 
 which remained unpaid, and was inventoried by the executors, for the sum of
 
 $2504 12,
 
 due at July, 1820. It was received by Mr.
 
 Maxwell,
 
 ami retained by him as part of the legacy to the testator’s four grand children,
 
 Eugenia, Richard, Calhoun, Stephen,
 
 to whom he bequeathed “all his notes of hand.” The claim to it is now made for the grand children, while the next of kin, insist that it is not included in their legacy,, but is undisposed of. Of this latter opinion is the court. JVbfes
 
 of hand
 
 may well include promissory notes, properly speaking, single bills and bonds. It is a name given generally by the unlearned, in common, to all those evidences of debts which are verified under the hand of the debtor, and which the creditor keeps. It is not an apt legal term to describe a debt by judgment; nor is it ever used in that sense as its popular one. This debt therefore falls into the residuum, and is to be accounted for as such.
 

 The questions of the most importance to the parties, and of the greatest legal difficulty, relate to the disposition to be made of this residue. The testator’s next of kin are Mrs.
 
 Fenner
 
 and Mrs.
 
 Johnston.
 
 To the latter he gives a legacy of $3,917,
 
 “
 
 in notes, to be taken out of my notes by my executors, and paid over to her as soon after my death as it can conveniently be done.”— To a nephew
 
 Stephen Onterbrulge,
 
 he bequeathed $1500 “to be paid as soon as the executors could collect it, but if he should choose to receive the amount in good notes he can do so.” Then follow a conditional legacy of $350, to his brother’s widow
 
 Drucilla,
 
 and a legacy of $250 to his niece
 
 Polly
 
 j which he directs the executors to pay to them, as soon as they can collect the money. The next legacy is to the daughter, Mrs.
 
 Fenner,
 
 of the Bank stock, which, ho remarks, cost him $7,600. He
 
 *497
 
 adds, “ I do further give to my said daughter glá,400 in notes, to be paid to her by my, executors as
 
 soon after
 
 my death as it can be conveniently done, that with the Bank stock will make the sum of g20,000.” In the same clause he proceeds to devise to her lands and bequeaths a number of slaves by name. He adds, “ I further give to my said daughter all my stock of horses, cattle, sheep, hogs, with all the furniture at a particular house, and also my wagon, carts, with all my plantation
 
 tools,
 
 all my kitchen furniture, and the crops of corn,” &c.
 

 The next clause contains the disposition to the children of his daughter, Mrs.
 
 Fenner.
 
 It is, “I do give and bequeath to my four grand children, namely,
 
 E. It. C.
 
 and
 
 S.
 
 all the notes of hand that will be remaining, after paying off all the
 
 legacies herein before given,
 
 which I suppose will be about from twenty to thirty, thousand dollars worth; all of which notes so remaining, I do fully and freely give to my said grand children. And I desire my executors to take into their possession said notes, left for the use of my grand children, and keep them on interest altogether, that is, not to have them divided until the oldest child becomes of age or marries, that whatever loss may be on said notes may fall equally on all.” He then gives authority to the executors to take negroes for sucli of those debts as they might ■ deem it necessary to call in, and hire them out, for the children; to whom he adds a legacy of a number of slaves by name.
 

 A short time before the making of the testator’s will, he administered on the estate of
 
 Richard Fenner,
 
 the late husband of his daughter, and the father of the four grand children to whom the foregoing legacies are given, and was indebted to them for their distributive shares in a sum which amounted to 1404 22, in 1828, when it was paid. It is contended for the next of kin, that those debts were satisfied by the legacies, and are not payable out of the residue. That all the legacies of the will are specific or expressly charged on the notes' after the payment
 
 thereout
 
 of all the previous legacies, and by consequence ; that the residue is only chargeable with the
 
 *498
 
 other debts of his testator, and after satisfying them, is to be distributed by law, among the next of kin.
 

 A legacy a dito^Vfthc^aiaé "a^re witl1 l!lc qua)’ 0r greater ™lue> «
 
 prima
 
 of it.’ a]?ajmci1
 

 . a<JoP' tion of this rulo hasbecn regretted and there are many circumstances which repel the Prosumpdon.
 

 It is extremely probable from the large sum due to the testator,upon bonds and notes and bis liabits, as to be col-lectedfrom bis language throughout the will, of keeping bis moneys at interest, that lie contemplated on having very little of bis substance in cash ; arid that be expected all bis legacies to be paid either in securities, or in money to be collected on them, after bis death. If this be true, be meant the disposition in' favor of bis grand children as it has been understod by the executors, as a residuary clause. That is, be thought it would in fact, pass all that sucli a clause would in law pass. But he has not so framed his will, as to allo'w the court latitude to adopt that construction.
 

 The several questions made are therefore to be decided upon the particular terms of the several bequests.
 

 It is true, that if one be indebted and give to the creditor a legacy of the same nature with the debt of a greater, or equal value, it is, under circumstances, taken to be a satisfaction. The rule is an old one, and cannot now bo denied. It was adopted on the idea that it was the intention of the testator to pay the debt by the legacy; for certainly, like all other questions upon wills, the construction must be according to the intention.— Hence many of the Chancellors have regretted the decision, and denied that it accorded with the intention; because there is no reason why a testator may not mean to give a bounty to one whom be owes, and also pay a debt to one for whom he feels kindness enough
 
 1
 
 to make him a legatee. None have, however, ventured to decide against the rule, when the case fell clearly within it; as if the debt be for a certain sum of money, and the legacy, if an equal or larger sum of money,
 
 simplidter,
 
 that is, payable unconditionally and immediately, or when the debt would be due. But regarding the intention to which the r.ule was formed as being but equivocal, any, the least circumstance, indicative of a contrary intention, or not consistent in point of justice with an intention of satisfaction, has been laid hold of
 
 *499
 
 to take a case out of the rule. The exceptions are now as well established as the original principle ; so that that principle itself cannot be as properly stated in any way as by modifying it at once by the enumerations of tbe circumstances which control it; and numerous authorities were cited at the bar on each side, which it is unnecessary to notice particularly. They are collected and collated by Mr.
 
 Roper
 
 (2
 
 leg.
 
 38
 
 et
 
 seg.) where the several distinctions are clearly explained, and the whole doctrine is very fully stated in the case of
 
 Strong
 
 v.
 
 Williams
 
 (12
 
 Mass. Rep.
 
 391.) It is now understood that express direction in the will for the payment of debts, requires the debt as well as the
 
 legacy to be
 
 paid; because the testator says that it is his intention. Both are also to be paid when either is contingent, and the other not; when they are payable at different times, the legacy, though larger, being at the later day; when the debt and legacy are of different natures, as if the the former he for a sum of money, and the latter be of specific things which may be destroyed, and thus the legacy lost; when the debt is contracted subsequently to the making of the will; or when the amount of the legacy is uncertain, and given as being uncertain. Tim rule itself ought to be now laid in these restricted terms. It may be said that a legacy, is intended as a satisfaction of a debt in some cases ; but in those above mentioned, it is not so intended.
 

 As a general direction for the payment of debts, er if the legacy he contingent: — -or payable after the debt, or he specific or uncertain, or given after the debt is contracted.
 

 Especially it is repelled where the debt is contingent.
 

 To apply these principles to the question, whether the testator intended that the distributive shares of his daughter and grand children should not be paid to them? In relation to the grand children, the point is clear, upon many grounds, In the first place, the legacy throughout to them is specific, consisting of slaves
 
 nominatim,
 
 and all
 
 the notes of hand
 
 that will be remaining &c.
 
 If the testator
 
 had called
 
 in
 
 all his debts on bond and note, it would have been an ademption of the legacy. The question is not what he might possibly have intended, if he had known the case that happened to exist at his death ; but what is to be inferred from the will, was his intention when lie made it. It was
 
 *500
 
 altogether uncertain what notes he would then have; and the legacy being specific, depended for its value and effect on that circumstance. So of the gift of a residue, because a residue is necessarily contingent, and may be altogether exhausted. This legacy is not only specific, but is residuary. It is not, it is held, the gift of a general residue; but the
 
 remaining
 
 part of the notes after the payment of other legacies. Confining it to the notes makes it specific, that is, a gift of the
 
 corpus,
 
 and the words following, “ that may be remaining,55 constitute it a gift of them as a special residue. This also renders it uncertain; not because it might, as a general residue, be diminished by debts; but because the whole amount of notes specifically on hand might not be more than adequate to the payment of the legacies before charged on them. The testator says the amount was problematical, and might be ten thousand dollars, more or less. His estimate turned out to bo nearly gS0,000 too little; but it might have been as much too high.— Again, this legacy is not payable until twenty-one, or marriage, and the children were young; whereas the debt, if any thing, was due immediately, or would be so in two years. For these reasons, the court entertains the opinion that the grand childi’en were entitled to their legacy and also to their distributive shares. There are other reasons sufficient to authorise the same conclusions, which are equally applicable to the case of the grand children, and that of their mother, supposing her legacy of gl2,400 to be a general pecuniary one. The testator, in the beginning of his will, expressly directs “ all his just
 
 debts
 
 to be paid.” Such a direction has been relied on as decisive, that there was no intention that what was called by the testator himself a gift, should be a payment. In some of the cases, the direction has been for payment of debts and legacies; but the
 
 debts
 
 is the material word, because giving the legacies imports that they are to be paid without a further special order, and in a late case,
 
 Adams
 
 v.
 
 Lavender,
 
 (1
 
 M’Clel. & Y. Rep. Exch.
 
 41,) the direction was confined as here,to the debts ; and held not a satisfaction. There is another
 
 *501
 
 circumstance which is very strong with me. The teS-> tator returned his account of sales of
 
 Fenner’s
 
 estate to September County Court, and made his will the second day of October following. The debt due to the distrh butces must have been altogether contingent in his mind; for there must be strong reasons to expect that every dead man is indebted more or less, and it was probable his intestate might owe the whole value of the small part of his estate which be sold. Besides, the testator could not contemplate these shares as debts due from him when he made the will. He had not settled the estate, or rendered any account to the next of kin» Upon his death, before any account thus ascertaining the estate, debts or distributive shares, he must have known . ' that he would be accountable to the administrator aetw-
 
 n¡s non
 
 0f his intestate, and not to his next of kin. Not only was the amount of tlie^debt contingent, but its ex* 'stenc0’ as 0110 °y>'ing by the testator to these legatees, was also contingent. In the event on which the legacy cou]c| alone operate a satisfaction, namely, the testator’s death, he must know' that in case he had not accounted |j10 legatees v/ould have no demand which they could enforce without a new administration. And there is no j118*" Sroun^ ^01’ supposing that it was meant by the testator that the gifts of this will should be taken in disc^iai’Sc v'7hat might turn out on a remote settlement with an administrator
 
 de louts non
 
 to be the respective interests of the legatees in that fund. Unless the will contain something to shew the contrary, it is not to be presumed that the testator considered himself
 
 debtor
 
 to the next of kin for that estate at all, but only accountable for it to such persons including them, as might have demands against it while unsettled, or in it, when closed.
 

 And where at the date of his will, the testator Was an administrator, and upon his death without settling his administration, bound to account with an administrator tfe
 
 bonis
 
 IT by Mm* t o The next of km of lus intestate, are not payments of their distributive shares»
 

 notesufbetake" out of my notes nnd handed over, ly a charge for its amount upon the testator may is° a° specific ^legacy of securities ceTudnedt0 beaS"
 

 The opinion of the court is therefore declared to be that the legacies to Mrs.
 
 Fenner
 
 and to thechildrcn,aro not to be taken to be, in satisfaction of any moneys which it happened, at the death of the testator or after-wards, they had a right to demand in respect of their distributive shares of the estate of
 
 Richard Fenner,
 
 do-
 
 *502
 
 ceased, but that the said legatees have a eight to the said legacies, and also to retain the money received by them on account of those distributive shares.
 

 The next questions are upon'thc nature of the legacies to the other persons, besides, the grand-children, upon which depends the fund out of which they are payable, that is, whether out of the residue generally, or out of the notes as specifically given.
 

 It is our opinion, that the legacy to Mrs.
 
 Johnson is'f
 
 specific. The gift is indeed, not pf a particular thing set apart as one individual
 
 corpus,
 
 by the testator, but it is of that nature. It is not absolutely a general leg-,ncy, so as to abate with mere pecuniary legacies, payable out of the residue. It is charged on a particular part of the estate, and therefore is not to fail, while that fund is sufficient to satisfy it. It is by the-words not merely charged on that fund, but is to be paid, not in money to be raised from the fund, but in the securities themselves, which the testator might leave -in specie at his death
 
 ‘,
 
 and, if no such securities had been left, it must have failed. It is a legacy to a certain Value “in notes, to bo taken- out of iny notes as soon after my death as it can be done’5 — thus marking tlie very thing given. It is not marked so, that but one single thing of that kind owned by the testator would be within the description. But it is so marked, that nothing of the same kind, not owned in specie by the testator at his death, would satisfy it — - nothing but “ my notes.” By which he denotes the whole of the very things, and then gives part of those particular and additional things to the legatee.
 

 Upon this difference between the terms, in which this legacy is given and in which the others arc expressed, arises the material dispute between the parties; for, if the other legacies are general legacies, they are payable out of the residue, and will exhaust it and thereby leave á larger amount of notes for the grand children ; but, if specific, then they must be paid from and in the notes, and the residue will belong to the next of kin.
 

 The leaning of the courts is against construing doubtful terms into a specific gift, because the gift is lost upon
 
 *503
 
 the failure of the fund, from any cause; arrd aiso, because it is not subject to tbe equitable principle of equality by abatement. It must'be clear therefore, upon tbe will, that nothing is meant but a particular thing, or a part of a particular thing, existing in specie at the making of the will, or when it is to take effect. If the words will be satisfied by any tiling of the same kind, not owned by the testator, the legacy is general. Tho difference may be illustrated by the common case off a contract to sell and deliver goods of a common kind; say one hundred barrels of cam, upon which the remedy is by action for damages, for not delivering and a contract to sell a certain hundred barrels, as a distinct, parcel in a crib, which vests the property and gives tro-ver or detinue upon refusal to deliver.
 

 But' ono to bo paid as soon as its amount can be collected, or if tho “ legatee is willing to receive that in good notes ho can do so;” is & general legacy.
 

 The legacies to the brother’s widow and the niece, are purely pecuniary, and without reference to any funds, but are payable as soon as money from any source can be collected.
 

 That
 
 to the nephew’
 
 Stephen,
 
 is given in the same way, except that the testator adds, “that if lie is willing to receive that
 
 amount
 
 in good notes,lie can do so.” It is to- be recollected that the rule is, that it must be manifest upon tiie whole will, that nothing but a gift in specie was intended. I have no doubt in my own mind, that this testator expected his nephew to receive either apart of the very securities left by him, or that the 81500 would be raised outof those very securities. But lie has hot given the legacy in that way, or tied it'up by his words to any such contingency. It is left with the nephew to take the money, and therefore upon the failure of notes lie would yet be entitled to the legacy. Moreover, although lie certainly anticipated that if paid in notes, they would be selected out of those left by him, yet lie has not said so, and therefore the legatee would not be confined to them. The case of
 
 Sibley
 
 v.
 
 Perry, (7 Ves.
 
 523,) is a forcible illustration of the principle which governs the construction of this clause. That was a direction-to the Executor, within three months after the testator’s death, to transfer sGlOOO Stock, in the funds
 
 *504
 
 styled the Three per cents consolidated annuities, to several persons. The testator then had the funds of that kind, from which and the particular words
 
 transfer
 
 and
 
 in the,
 
 the inference to the apprehension of every individual understanding is, that he had in his mind that very stock. Yet Lord
 
 Eldon
 
 held, that upon the general rule, it was-a general legacy, because the testator had not in the will, appropriated the particular Stock, as his Stock, or by other means which would show that no other- Stock held by him would do-.
 

 So also is a legacy “ in notes to be paid as soon after my death,” &c, there being nothing to denote that any particular notes were intended.
 

 And a subsequent bequest of “all the notes that will be remaining
 
 *505
 
 after paying off t,he legacies here-m before given,’ will not make them specific, because the remain-dor being uncer-tam m amount, ed. indicates that the charge upon them tional*°^part^of them, was intend-
 

 
 *504
 
 This reasoning goes also to the same conclusion as to the nature of the-legacy of gl2,400 to Mrs.
 
 Fenner.
 
 There is no election indeed, given to her, to take money or notes to the value, but she is to be paid in notes at all events. But the testator docs not say in
 
 Ids
 
 notes. It may be admitted, that ho expected her to be so paid — that the Executors would offer them, and that she would accept them, and that he was morally certain ©Heaving such. But she is not restricted to them, and if there had not been
 
 notes, there
 
 can be but little doubt, if the testator had admitted the thought of that event, ho would not have considered, that thereby iiis daughter should lose her legacy. The words
 
 arc
 
 — “ in notes, to be paid by my Executors, as soon after my decease as it can conveniently be done” — which falls almost literally within
 
 Sibley
 
 v.
 
 Perry.
 
 Tins is the stronger here, because the testator had just before given a similar general legacy to his nephew, accompanied by other words, which clearly decide that he did not, in that instance, intend to give by those, a specific legacy ; and because, in the legacy to Mrs.
 
 Johnson,
 
 and in that of the money, furniture, stock, wagons, &c. to Mrs.
 
 Fenner,
 
 he evinces a knowledge of the proper methods of making a specific legacy where he meant one, by the use of the possessive pronoun,
 
 my,
 
 to identify the fund. Upon the ivordsof the bequests to these several persons therefore, it seems, upon authority, the legacies are general, and not specific.
 

 It is however argued that the doubts upon those clauses as expressed, arc removed by the manner in which the gift to the grand children is made. That is clearly spe-
 
 *505
 
 ciftc, and is of the notes “that will be remaining after l)ayinS °ff the legacies herein before given, which I suppose will be from gao to 30,000.” The
 
 words,“rc-maining after paying off all the
 
 legacies,” are considered as referring the preyious legacies so directly to tliepar-ticular fund of w hich tlie remnant is thus specifically \ given, as to make those previous legacies consist of spec¡f;c portions of the fund itself.. Certainly, different fractions of the same
 
 corpus
 
 all will be specific. It is a}so
 
 trilC)
 
 tliat the general terms used in the prior gifts may be controlled and rendered specific in the disposition eac'‘ l,arb by such a reference in-the gift of cvc-ry one of Use parts, as will shew an intention that each legacy was so much of the identical thing. As in
 
 Sleigh
 
 v.
 
 Thorington,
 
 (2
 
 Ves.
 
 361,) where the testatrix gave £2413 of South Sea Stock, or annuities in different proportions to several persons, and then gave to
 
 A
 
 “the remaining
 
 £13
 
 13 South Sea Stock,” and it was held that the legacies were specific by force-of tiie words in the last gift, and that the deficiency could not be made up out of the general assets. The last words referred plainly to stock then standing in her name, that is, at the making of the will, as was evident from the exact balance, £13 13, being computed. That computation was incorrect; nevertheless, the making a comptuation, so as to exhibit a balance, true or false, shewed that she was only giving away that which then existed, or which she thought then existed; andas the last was of that character, -the previous dispositions of parts of the Stock meant parts of that identical Stock. The whole force of the argument in that case rested upon the residue being stated as the exact residue of certain Stock then held by her. It can have no application to a case where the residue given is of flic things of that sort which the testator might have in specie at his death, which must he altogether uncertain ; nor to one, in which the testator shews in the Will, that he liad made no computation, —•and that the residue given specifically may he more or less, according as it may he necessary to resort to it for the satisfaction of the prior claims of the legatees.. Here
 
 *506
 
 ilic remainder is not given as a certain one, but expressly as being1 altogether uncertain. Besides the specific legacy of $3917', part of the notes, the other money legacies before that to the grand children amounted to $14,500. The giving over the residue of the notes, as being uncertain in amount, is demonstrative that the testator could not have considered that he had given away absolutely and definitely, as parts of the notes then held by him, that sum of g>14,500, because in that case, the residue must have been certain, and could not have varied from twenty, to thirty thousand. That variation could only arise by the general assets failing to a greater or less extent to meet those bequests, and thereby throwing them on the other fund for the various differences.
 

 Executors charg. eel with the raau-agement of legacies to infants aro entitled to commissions uponthe-prolits — but they take them
 
 as ex
 
 ecutors, to be divided according to their severalde-grees of labor; and upon the death of one who had possession of the fund,the survivor is not entitled to another commission.
 

 The true sense, we think, is that the prior legacies are not of fractional parts of the tilings of which the residue is given to the grand children, but is a charge on the fund. The reasons which lead to this conclusion produce the further one that the charge is not specific and primary on that fund, but only that they are to be made good at all events. For the reason why that fund was uncertain was, that these legacies, certain in their amounts, might require portions of it, larger or smaller, as the other parts of the estate primarily applicable to them, should prove sufficient or insufficient.
 

 We therefore declare it as our opinion, tiiat the debt of
 
 Hawkins
 
 and the dividends and monies in the Bank constitute the undisposed residuum — that all the legacies, except those to Mrs.
 
 Johnson
 
 and the grand children, are general pecuniary legacies, to be paid out of the residuum in the first instance, and that proving inadequate, then out of the legacies to the grand children. Consequently, as Mr.
 
 Maxwell
 
 has applied notes to the value of gá438 53, belonging to the children, to pay the legacy of Mrs.
 
 Fenner,
 
 for which he had that sum in hand, of the residue, in the moneys received from the Banks, his estate must make that sum good to them, unless it can be collected again from Mrs. Fenner.
 

 As to compensation to the executors, and the princi-
 
 *507
 
 pie on which it must be allowed, we are of opinion that they arc to receive it as executors. It is not necessarily incidental to the office of an executor to take the management of legacies to infants, but it is incidental to the office to have such duties assigned. It is the common case of a trust to the executors of a fund to accumulate. They take
 
 virtute officii,
 
 and hence by renouncing the office, the trusts will be executed by others, without an assignment from the executors. The
 
 executors jointly
 
 fill the office, and the duty survives to the complainant.
 

 A gift by will, of a note, came» with it tlio interest duo on it.
 

 Both are therefore together entitled to the commission given by law. Upon sucli an estate to be thus managed through a course of years, the highest commission is not more than an adequate remuneration for the labor and responsibility, if the trust be
 
 faithfully
 
 executed.— Thus far there hits certainly been perfect good
 
 faith;
 
 and the executors are entitled to claim at once a reasonable proportion of the commissions. In what proportions it shall be divided, as between the executors themselves, it is impossible for the court to say, without directing an enquiry as to the actual past labour and risk performed by each, and that which will probably be incumbent, for the future, on the survivor. If the parties should be unable to settle it to their own satisfaction, such an enquiry will be directed at the instance of either. But the court cannot allow full and double commissions in a case of this sort, when the executors as co-execu--tors took, and upon the death of one, the other, by his old office, acts exclusively. He gets no power by the other’s death, but only loses his aid.
 

 Certain other points arc raised in the answers of some of the defendants. One is, whether the interest accrued on the debts due on bonds and notes in the life time of the testator, passed
 
 to
 
 the grand children ? 0n this wc have no doubt. The interest had not been severed, as the dividends on the Stock had. The
 
 corpora,
 
 the notes themselves, arc given, and all passes that would pass by an endorsement, and there can be no question, that the assignee of a note past due, is entitled to the interest as well as the principal, due at the time of the endorsement.
 

 
 *508
 
 Another is, whether Mr.
 
 Maxwell’s
 
 estate is responsible for the debt
 
 oY Robert II. Jones,
 
 who has become insolvent ? The debt was contracted with the testator himself, when the debtor was in fact greatly embarrassed and probably insolvent; but notwithstanding, in-such- good credit, that no security was required but his own bond. His credit continued good up to the time of his declared bankruptcy, and .in the mean time, he renewed the bond and paid the interest punctually. It is to be recollected, that one part of the trust was to keep the fund at interest. There are therefore no losses in not collecting. The only ground on which it can be imputed, is in not increasing tho security. Good faith is required from the executor and circumstances to prove that he acted in good faith. This case is fully established by the debtor’s conduct and character, and tho course of dealing with him by the testator himself; and by tho discretion given by the will to the executors, as-to calling in monies from those who were debtors, at tho testator’s death. We declare therefore, that the complainant must receive the bond of
 
 Jones,
 
 as part of tho-funds of the children.
 

 An opinion upon the effect of compounding interest and including it in. bonds taken to renew others, is rendered unnecessary, as wo are given to understand, that pending this suit, all the debts upon which any difficulty would probably be made on that ground, have been paid into the hand's of Mr.
 
 Johnson,-
 
 the Receiver. We barely intimate, that although more troublesome, it would be safest to require payment of the interest annually and to re-invest
 
 it;
 
 and that the executor should also clothe himself formally with the office of guardian.
 

 All the parties must pay their own costs, except the complainant, whose costs must be paid out of the fund, and the defendant,
 
 Mary Maxwell,
 
 whose costs, up to this time, must also be paid out of tho fund in Court.
 

 Per Curiam — Order according!*;.