ALLEN, EXECUTOR, *v.* ETTER.

[No. 13,858.  Filed March 12, 1931.]

*Robert W. Marks* and *Chase Harding*, for appellant. *Walter H. Linn, Foley & Foley* and *Harry N. Fine*, for appellee.

CURTIS, J.—William E. Etter, appellee herein, filed his claim against the estate of James Allen, deceased. The claim was disallowed by the executor, William Allen, appellant herein, and transferred to the trial docket. His claim consisted of two paragraphs, the first of which alleged, in substance, that the estate was indebted to him for "board, room, washing, care and attention in sickness and health" of Fanny Allen, wife of James Allen, from December 24, 1920, to June 28, 1927, continuously for a period of 337½ weeks, all of which was alleged to be of the value of $3.50 per week, totaling $1,181.25; and for "board, room, washing, nursing and care and attention in sickness and health" of James Allen from December 24, 1920 to July 10, 1927, continuously for a period of 339 weeks, all of which was alleged to be of the value of $3.50 per week, totaling $1,284.50. The second paragraph of the claim was for exactly the same items and alleged that all of such had been done at the special instance and request of James Allen, for which he agreed to pay the sum of $3.50 per week each for his wife and himself, totaling $1,181.25 and $1,284.50 respectively. No answer was filed by the

appellant to either paragraph of the claim, but, under the authority of §3166 Burns 1926, Acts 1883 p. 151, this was not necessary unless the executor (appellant) was relying upon a set-off or counter-claim.

There was a trial by jury and a verdict and judgment for appellee in the sum of $1,750, from which the executor appealed.

The only error assigned as cause for reversal is the court's overruling of appellant's motion for new trial, the first three specifications of which are: (1) The verdict of the jury is contrary to law; (2) the verdict of the jury is not sustained by sufficient evidence and; (3) the assessment of the amount of recovery is erroneous, being too large.

Appellant also predicates error upon the following: (1) The court's giving of its own motion instruction No. 11; (2) the giving of instruction No. 8 tendered by appellee; (3) the refusal of the court to give instructions Nos. 2, 4, 6, 8, 12 and 13 tendered by appellant.

These are the only errors relied upon which have not been waived. Under his points numbered C, D and E appellant discusses the alleged error of the court in admitting and rejecting certain evidence and in requiring appellant to answer certain questions on cross-examination. At no place in the brief of appellant is there any reference to the several pages and lines of the transcript where the questions, answers, offers to prove and objections to the evidence or rulings of the court may be located in the transcript. Having failed to comply with the rules of this court in that regard, this court will not consider the questions which appellant thus undertakes to present regarding the court's admitting and rejecting that evidence. This exact question of predicating error on admitting and rejecting evidence has been recently before this court and was de-

termined adversely to appellant. See *Cornelius, Exr.*, v. *Thomas* (1929), 90 Ind. App. 254, 167 N. E. 563.

The evidence shows that James Allen, who died testate, and Fannie Allen, his wife, were the parents of appellee's wife, now deceased. On December 24, 1920, testator and his wife moved into the home with their daughter and appellee, her husband, and from that date until the death of Mrs. Allen, June 28, 1927, made their home with appellee and their daughter, appellee's wife. The evidence also shows that the two families lived together as one family; that they took their meals together; had their laundry done together and other facts showing that the two families lived as one common household. The two Allens were in their declining years and were sick a part of the time. They were each cared for in the home of appellee and the facts clearly show that appellee treated them as if they were his own parents. Mrs. Allen died in the home of appellee June 28, 1927. James Allen continued to live in the home of appellee until July 10, 1927, when he went to live with another daughter. It is for the services rendered to the decedent and his wife during this period of time that appellee filed his claim.

Appellant contends that since the evidence clearly shows that the parties were living together as one family and that ample time and opportunity were afforded claimant over a period of years to make demand for payment if payment had been intended, and that since no express contract for payment was ever made nor any demand for payment, that there is a presumption that the services had been paid for under the rule of periodic payments or that no payment was intended. For this reason, appellant insists the court erred in giving its instruction No. 11, and in refusing to give appellant's instructions Nos. 2 and 4, and says the effect was to

throw upon appellant entirely the burden of proving payment.

The rule of periodic payments as contended for by appellant and as announced in the case of *In re Cummiskey's Estate* (1909), 224 Pa. 509, 73 Atl. 916, cited by appellant, is not in point in the instant case. In the same state (Pennsylvania), in the case of *In re Beaver's Estate* (1920), 74 Pa. Super. Ct. 354, A, an old man, was taken into the home of claimant, where he was cared for until his death. In that case, it was contended that there was a presumption that appellees had been compensated by periodical payments for such services rendered decedent. The court said: "There was no contract between the parties nor any course of dealing from which it could be inferred that the appellees were to be paid for the services, which they rendered to this old man in a dying condition, at any particular time, or at any designated rate. The services performed by Mrs. Baum were not those of an ordinary house servant, and therefore, she did not come within the rule that such services are presumed to be paid for at fixed periods." See, also, *Lewis's Estate* (1893), 156 Pa. 337, 27 Atl. 35.

It was held in *Gough* v. *Finden* (1851), 7 Exch. (Eng.) 49, that "where a person serves in the capacity of a domestic servant, and no demand for payment of wages is made by the servant for a considerable period after such service has terminated, the inference is, either that the wages have been paid, or that the service was performed on the footing that no payment was to be made."

In *Sellen* v. *Norman* (1829), 4 C. & P. (Eng.) 80, Gaselee, J., said: "In the regular course, if a servant has left a considerable time, the presumption is, that all the wages have been paid."

In *McConnell's Appeal* (1881), 97 Pa. St. 31, it was there said: "This is the well-settled rule in England. . . . This presumption referred to in the cases cited rests

upon the known fact, that in England servant's wages, as a general rule, are paid at stated periods, and it is entirely immaterial whether such periods are weekly, monthly or yearly, and upon the further fact that a servant rarely leaves the services of an employer, and remains away for months or years, without a settlement of some sort with his or her employer, or at least a demand for payment. The same facts exist in this country, and there is, therefore, the same presumption. In either case it is a presumption which the law raises from a known state of facts, and a known course of dealing. It is, however, a presumption of fact merely, and liable to be rebutted.''

The courts of the State of Pennsylvania have gone as far as any of the courts have gone on the doctrine of the presumption of periodic payments; in fact, we have found no other state in which this doctrine has been extensively discussed, and, in that state, the doctrine has been held to apply only to the presumption that periodic payments will be presumed in cases such as the payment of the fixed wage of servants and the like. This seems to be the holding of the English cases. But where, as in the instant case, the services were not in the nature of an ordinary house-servant's services, bı t were of an entirely different nature, such as has been heretofore set forth as the basis of the claim in the case before us, then the doctrine of periodic payments will not be presumed and there will be no presumption of payment on account of the lapse of time less than the period fixed by the statute of limitations. This exact question has not been decided in this state except inferentially in the numerous cases heretofore decided in which claims similar to the one in this case have been upheld, but we have no hesitancy in saying that the true rule is as herein announced.

Instruction No. 11 given by the court is as follows: "Payment on an account is a matter of defense, and if it is shown that an account is owing and liability shown to exist thereon, then, before the jury could find that the same was paid, that fact would have to be established by a preponderance of the evidence having reference to and bearing thereon. Payment would not have to be established by direct and positive proof, but may be established by circumstantial evidence. And the evidence would not necessarily have to come from the defense, but could come from either claimant's side of the case or from the side of the defense, or from both. You will consider all the evidence, facts and circumstances shown in the case, if any, having reference to and bearing upon the question of payment, whether it comes from the claimant's side of the case or from the defendant's side and from the whole evidence, so offered, if any, determine this question." This instruction correctly stated the law.

Instruction No. 4, tendered by appellant and refused by the court proceeded upon the theory that "if it is also made to appear that the party for whom the service is rendered is presently from time to time able to pay, the law presumes that payment has been made at reasonable periods." This tendered instruction is not the law in this state, as applied to the facts in the instant case and was correctly refused. In the instant case, appellee's claim was not based on services rendered as an ordinary house-servant nor was there any dealing or agreement between appellee and decedent from which it could be reasonably inferred that payment was to be made or had been made at any particular time or in any specified amount. No precedent of periodic payments had been established by their dealings. The rule of periodic payments does not apply in the instant case. Since instruction No. 11, given by

the court, stated the law correctly, it was not error for the court to refuse to give appellant's requested instruction No. 4.

Appellant's requested instruction No. 2 was to the effect that "courts look with disfavor and suspicion upon claims brought against decedent's estate for personal services by one who has been a member of decedent's family; and, as a matter of law, such claims require a stronger degree of proof to sustain them than in the case of ordinary claims by strangers." We have searched the authorities but fail to find a single case supporting the theory advanced in this instruction.

The law regarding claims against an estate by a person rendering such services who is a member of decedent's household is clearly stated in *Ellis* v. *Baird* (1903), 31 Ind. App. 295, 299, 67 N. E. 960, where it was said: "Where the person rendering services and the person for whom they are rendered are members of a family living together as one household, and the service appertains to such condition, an implication of a promise on the part of the recipient to pay for the services does not arise from the mere rendition and acceptance thereof, but the service will be presumed to be gratuituous; and, to support a recovery therefor, the burden will be upon the plaintiff, who rendered the services, to show an express contract for compensation or such circumstances of the services as manifest a reasonable expectation on his part of compensation therefor." See, also, *Hill* v. *Hill* (1889), 121 Ind. 255, 23 N. E. 87; *Crampton, Admr.,* v. *Logan* (1902), 28 Ind. App. 405, 63 N. E. 51.

Our courts have gone no further in similar cases to the instant case than to say that there is a presumption that such services are gratuitous, but that this presumption may be rebutted by an express or implied contract to pay for the same, the existence

of which is a question of fact for the jury. This we believe to be the law.

It appears from the evidence that the decedent, James Allen, by his will, bequeathed to the claimant (appellee) the sum of $1,000 and that, by another item of his will, he directed that his debts be paid.

Appellant says the court erred in giving instruction No. 8 tendered by appellee and in refusing to give instructions Nos. 6, 8, 12 and 13 requested by appellant, all of which dealt with the $1,000 bequest referred to above. These particular alleged errors have been grouped together by appellant under his points and authorities and will be discussed here together.

Appellee's instruction No. 8, of which complaint is made, in effect, told the jury that if the testator is indebted to his legatee, and the amount of the debt is unliquidated, or is an open and running account, then a bequest to such legatee will not be deemed a satisfaction or part payment of the debt, and such legacy cannot be considered in determining what. amount, if any, the claimant is entitled to recover. By instruction No. 6, tendered by appellant and refused by the court, the appellant sought to have the jury instructed, in effect, that, even though the amount found owing to claimant was upon a running, open and unliquidated account, yet if said amount was not greater than the legacy, the claimant would not be entitled to recover on his claim if the jury found there was sufficient property and assets in the decedent's estate to pay the legacy in full. Instruction No. 8 tendered by appellant and refused by the court, in effect, asked that the jury be instructed that if they found the decedent made a provision in the will for the claimant to receive $1,000 and if the jury should further find that the decedent was indebted to the claimant in an amount greater than $1,000 and that said indebtedness had not otherwise been

paid, that then the jury would have a right to take into consideration such provision in the decedent's will in determining what amount, if any, should be awarded the claimant in this case. Instruction No. 12 tendered by appellant and refused by the court, in effect, asked that the jury be instructed that the decedent might liquidate and determine the amount due upon an implied contract for services rendered merely by a bequest of a definite amount to such creditor and that such legacy would be presumed to be a payment of such liability and a satisfaction of such indebtedness and that the claimant would not be entitled to recover in the action. Instruction No. 13 tendered by appellant and refused, in its practical effect was almost directly opposed to instruction No. 8 tendered by appellee and given by the court. It, therefore, follows that if the latter instruction is correct, then said tendered instruction No. 13 was erroneous.

We believe the court did not err in giving instruction No. 8 tendered by appellee and in refusing to give instructions Nos. 6, 8, 12 and 13 and each of them tendered by appellant. Where, as in this case, the amount of the debt sued on is unliquidated, or is an open and running account, a bequest to such creditor will not be presumed to be a satisfaction of the debt or any part thereof. This is particularly true where the amount of the legacy is less than the amount due the legatee from the testator. If there is a direction in the will, as in the instant case, that all of the debts of the testator be paid, this direction will negative the idea that the bequest was intended by the testator to be payment or a part payment of the creditor.

In the case of *Smith* v. *Park's Admr.* (1905), 27 Ky. Law Rep. 12, 84 S. W. 304, a case similar to the one under consideration, the court said: "The devise was not equal to the whole debt claimed by the appellant

from the estate of the decedent, therefore, the rule that, where a party is in debt and devises to his creditor a sum equal to or greater than the amount of the debt, it is to be construed as a payment, has no application here. The will, in addition, contains an express devise for the payment of her debts, and this fact negatives the idea that the specific devise of $500 was intended as payment, the rule being that where a testator in his will directs all his just debts to be paid, if then he owed to his devisee a just debt, he virtually directs its payment as well as payment of the legacy."

In the case of *Strong* v. *Williams* (1815), 12 Mass. 402, 7 Am. Dec. 81, the court said: "It has been holden that a legacy for a less sum than the debt shall never be taken in satisfaction."

"It (the general rule) has never been applied to the case of a debt existing in an open and unliquidated account; because the testator, in such a case, is not supposed to know how the balance stands, and whether the legatee is his creditor or not." *Williams* v. *Crary* (1826), 5 Cow. (N. Y.) 368. See, also, *Gilliam* v. *Brown* (1870), 43 Miss. 641.

There is no presumption that a legacy to a legatee who also is a creditor of decedent, is in settlement of a debt where the legacy is much less than the debt which is also unliquidated. *Winner* v. *Chucart* (1919), 202 Mo. App. 176, 215 S. W. 905. See, also, *Mitchell* v. *Vest* (1912), 157 Iowa 336, 136 S. W. 1054; *Olsen* v. *Hagan* (1918), 102 Wis. 321, 172 Pac. 173; *Lisle* v. *Tribble* (1891), 92 Ky. 304, 17 S. W. 742, 13 Ky. Law Rep. 595; *Owing's Exrs.* v. *Owings* (1927), 1 Harris & Gill (Md.) 484.

Where a will provides for payment of debts, there is no presumption that a legacy was in payment of debt. *In re Cole's Estate* (1914), 85 Misc. Rep. 630, 148 N. Y. Supp. 1099. See, also, *Lisle* v. *Tribble, supra; Van Riper*

v. *Van Riper* (1838), 2 N. J. Eq. 1; *Perry* v. *Maxwell* (1834), 17 N. C. 488; *Strong* v. *Williams, supra.* For other cases on this same matter, see *German* v. *German* (1869), 47 Tenn. 180; *Morris* v. *Morris' Exr.* (1868), 3 Hous. (Del.) 568; *Morton* v. *Dougherty's Exr.* (1883), 4 Ky. Law Rep. 983; *Glover* v. *Patton* (1897), 165 U. S. 394, 41 L. Ed. 760; *Sharp* v. *Wightman* (1903), 205 Pa. 285, 54 Atl. 888.

We find no reversible error. Judgment affirmed.