1. There is no basis for a holding here that respondent's services were rendered under an agreement that he would be compensated by a testamentary provision. No such claim was made below or here. Respondent's claim is based upon an implied contract to compensate him by payment of the reasonable value of his services. The defense was that the services were rendered gratuitously and that the legacy was intended to be in full satisfaction of all services rendered.
In appellants' brief the claims of the parties are stated as follows: "In his statement of claim filed in the district court, claimant stated that the services were rendered under an express agreement whereby the Cookes agreed 'to pay and compensate claimant for such services, and further agreedthat he should be paid by the survivor, or from the estate ofthe survivor.' " And "in appellants' answer to the statement of claim it was alleged that the services were performed gratuitously, without any expectation or understanding that compensation was to be made therefor, and that the provisions in the will in claimant's favor were substantially in excess of the reasonable value of any services rendered, and that the bequest to claimant amounted to payment of any claim he might have." The evidence related entirely to the issues thus made, and those issues were the only ones submitted to the jury.
Appellants' requests for instructions clearly recognized that no other issues were in the case. Request No. 1 was to the effect that if there were an agreement that respondent was to be *Page 444 
compensated by a testamentary provision the legacy was to be in full payment if it exceeded the services in value and was to be deducted from the amount thereof if of less value. The court refused to give the instruction as requested and eliminated that part which referred to the services as having been under an agreement to compensate respondent by a legacy. Appellants acquiesced in this ruling, did not assign it as error in the motion for new trial, and have not assigned error on it here. Request No. 2 was that respondent was not entitled to recover unless Mrs. Cooke had agreed to compensate him for services rendered both to her husband and herself. This request was given.
There is not one word of testimony that respondent was to be compensated by a provision in the will. Appellants offered no testimony on this point. Respondent was not permitted to testify on this point himself. His evidence was that Mrs. Cooke had made numerous statements to the effect that respondent was to be liberally compensated. There is not one word of testimony that she ever said that there was an agreement that the compensation was to take the form of a legacy, much less that she and respondent had so agreed. True, she talked about making wills. She executed more than one will. She had different plans at different times. She stated several times that she was going to will her entire estate to respondent. There is as much reason to hold that she agreed to leave him her entire estate as there is that she intended to compensate by will.
The will itself is silent with respect to this question. There are some 14 similar devises and bequests. The reasons for making them are stated. Three provisions were for the benefit of Mr. Cooke's relatives. No other reason is given for remembering them. The other 11 provisions include those for respondent, Sidmore, a foster son in fact, two former employes, and six friends. The provision for the foster son is stated to be made because of such relationship. Although respondent and Sidmore were the only two who had claims against Mrs. Cooke for services, they were treated like the other friends. The will recites that the provision for each of them was made because the testatrix *Page 445 
desired to distribute her estate to those who had been kind to her and her husband and made their lives most pleasant. She did not in this respect discriminate between those to whom she was and those to whom she was not indebted. Since the testatrix stated with particularity the reasons for each provision in her will, the inference is permissible, if not required, that none of the provisions were intended to be in satisfaction of her debts or she would have said so. Respondent satisfactorily explained his signing the petition for letters testamentary containing the statement that there were no debts. He told the lawyer who drew the petition that he intended to file his claim.
In that situation this court is not justified in finding as a matter of law that the services were rendered under a contract to compensate by a testamentary provision. We are not justified in making a finding for which there is no support in the record, or in deciding the case upon points which were not raised either below or here.
2. We should not adopt the so-called pro tanto rule announced in the decisions cited in the majority opinion, for the reasons that the rule does not rest on sound principles and has been repudiated in effect by all the courts which profess adherence to it. In adopting a rule for this class of cases we in effect make the law where none now exists. It is not only our province, but our duty, to adopt that rule which accords with sound legal principles and common sense.
The rule, which the majority adopts, is stated to be that a legacy to a creditor will be presumed, in the absence of expression to the contrary, to be intended as a satisfaction of the debt, in full if equal to or greater, or pro tanto if less than the debt. The rule is sustained by innumerable authorities. It has been repudiated in effect by an equally imposing array of authorities from the courts which apply the rule. To cite the cases would be to write a catalogue. See annotation, 86 A.L.R. 6, et seq. 69 C. J. p. 950, et seq.
We are not bound to follow the authorities one way or another however numerous they may be. The question being one of first *Page 446 
impression here, decisions in other states have persuasive authority only and are entitled to such consideration as their reasoning merits. "They are to be weighed, not counted." Gorrell v. Greensboro Water Supply Co. 124 N.C. 328, 335,32 S.E. 720, 722, 46 L.R.A. 513, 70 A.S.R. 598, 14 Am. Jur., Courts, § 85.
The basis of the rule is a presumption of law which is contrary to the fact. In Reynolds v. Robinson, 82 N.Y. 103,107, 37 Am. R. 555 (a subsequent appeal of the same case,64 N.Y. 589, cited by the majority) this is pointed out in the following language:
"The law raises, in certain cases, presumptions against theapparent intention of the testator, and one of these presumptions is, that a legacy from a debtor to a creditor of a sum as great or greater than the debt was intended as a satisfaction."
This is contrary to all legal principles. The cardinal rule of construction is to ascertain the intention of the testator and to give it effect. To this rule all others are required to yield. "One of the highest duties resting upon a court is to carry out the intentions of a testator as expressed in valid provisions not repugnant to well-settled principles of public policy." 6 Dunnell, Minn. Dig. (2 ed. Supps.) § 10257; In re Trust Under Will of Holden, 207 Minn. 211, 215, 291 N.W. 104. A presumption contrary to the testator's intention is a hindrance to discovering and giving effect to such intention and as such is contrary to the most fundamental principles in construing wills. Why should a court adopt a rule that rests upon a falsehood, which a presumption contrary to fact surely is?
That a rule resting on a false foundation could not be justified was to be expected. Story points out that it is difficult to vindicate the rule for the reason that what is given by a will ought from the character of the instrument to be deemed a bounty, and that the presumption goes contrary to that fact.
"The truth is that the doctrine was introduced originally upon very unsatisfactory grounds, and it now stands more upon authority than upon principle. And a strong disposition has been manifested *Page 447 
in modern times not to enlarge the sphere of its operation, but to lay hold of any circumstances to establish exceptions to it." Story, Equity Jurisprudence (14 ed.) §§ 1478, 1479.
Pomeroy's views are the same as Story's. 2 Pomeroy, Equity Jurisprudence (4 ed.) § 527, et seq. In 28 R.C.L. p. 299, § 277, the rule is criticized as follows:
"The rule is not founded in reason, and often tends to defeat the bounty of testators; and able chancellors have thought it more agreeable to equity to construe a testator to be both just and generous when the interests of third persons are not affected. Courts of justice will accordingly lay hold of slight circumstances to get rid of the rule. The presumption does not obtain where there is a direction in the will for the payment of debts, where the purpose of the legacy is expressly stated in the will, or where the testator merely bequeaths specific chattels to the creditor instead of giving him a money legacy. So where the legacy is smaller in amount than the debt, it will not be construed as a satisfaction of the debt. It is also well established that where the debt is unliquidated, or is owing on an open or running account between the parties, a legacy by the debtor to the creditor will not be deemed a satisfaction of the debt. Accordingly it has been held that a legacy by a debtor to his creditor did not constitute a satisfaction of the debt, when the same consisted of an unliquidated money demand due at the time of the testator's death, and the legacy was of specific chattels and money payable twelve months after the will was recorded."
The cases expressing similar views are found in the annotation, 86 A.L.R. at p. 16; 69 C. J. p. 950, et seq.
It is elementary that there can be no valid presumption unless there is rational and evidentiary relation between the fact presumed and the fact on which the presumption rests. It has been held that a statutory declaration that a fact shall be presumptive evidence of another is lacking in due process of law unless such a relation exists. Morrison v. California.291 U.S. 82, *Page 448 54 S.Ct. 281, 78 L. ed. 664, 20 Am. Jur., Evidence, §§ 9, 159. The rule that a legacy to a creditor is presumed to be payment of his debt seems to have survived notwithstanding that the presumption is admittedly contrary to the fact and violates sound legal and constitutional principles.
Such a rule was bound to be a source of trouble. There seems to have been no direct assault on the rule on constitutional grounds. But it has been overcome in practice in a great variety of ways. That judges would search out the truth in order to discover and effectuate the intention of testators was to be expected. The force of truth compelled them to recede from a rule that was based on a false presumption of fact. While giving lip service to a rule which by falsehood obstructed the quest for truth, they riddled the rule with exceptions and distinctions so as to reduce it to a shadow. The exceptions and distinctions are too numerous to be mentioned, but a few will illustrate what is meant. The presumption is held to be prevented from operating: Where the debt and legacy are of different natures, as to subject matter or extent of interest, Will of Shirley, 207 Wis. 549, 242 N.W. 207,86 A.L.R. at p. 18; in consequence of which a legacy of specific chattels, as here, will not be deemed a satisfaction of an obligation to pay money, Strong v. Williams, 12 Mass. 391,7 Am. D. 81; Deichman v. Arndt, 49 N.J. Eq. 106, 22 A. 799, note, L.R.A. 1915B, at p. 1176; where the purpose of the legacy is expressly stated in the will, as for example that the gift is in recognition of acts of kindness, as here, In re Arnton, 106 App. Div. 326, 94 N.Y. S. 471; or as a token of friendship, Newel v. Keith, 11 Vt. 214, see note,86 A.L.R. pp. 21-23; where the will contains a direction to pay debts, as here, Crocker v. Beal (C. C.) 1 Low. 416, 6 Fed. Cas. No. 3,396, p. 825; Allen v. Etter, 92 Ind. App. 297, 175 N.E. 286; Perry v. Maxwell, 17 N.C. 488, where the court said at p. 499: "It is now understood that express direction in the will for the payment of debts requires the debt as well as the legacy to be paid; because the testator says that it is his intention"; Reynolds v. Robinson, 82 N.Y. 103, 37 Am. R. 555,supra; note, 86 A.L.R. pp. 23-26; 69 C. J. p. 957; or where *Page 449 
the debt is unliquidated, as here, Glover v. Patten,165 U.S. 394, 17 S.Ct. 411, 41 L. ed. 760; Witt v. Witt,105 Ind. App. 415, 12 N.E.2d 1013; Williams v. Crary, 5 Cow. 368; Horner's Executor v. McGaughy, 62 Pa. 189; note,86 A.L.R. pp. 26-27; where, as here, the legacy is smaller than the debt, Reynolds v. Robinson, 82 N.Y. 103, 37 Am. R. 555,supra, note, 86 A.L.R. 29, and other numerous exceptions referred to in the annotation in 86 A.L.R. 6, and in 69 C. J. p. 950, et seq.
For over a century the courts have recognized that the true rule is that the intention of the testator should control. In 1830 the court said, in Williams v. Crary, 4 Wend. 443, 449:
"The truth is, there are so many exceptions that the rule on this subject seems to be, that a legacy shall not be deemed a satisfaction of a pre-existing debt, unless it appears to have been the intention of the testator that it should so operate."
More recent cases express the same view. Buckner's Admr. v. Martin, 158 Ky. 522, 165 S.W. 665, L.R.A. 1915B, 1156. See note, 86 A.L.R. pp. 15-18; In re Arnton, 106 App. Div. 326,94 N.Y. S. 471.
The ravages which exceptions and distinctions have made on the rule have all but nullified it. "The general rule has, however, been so often disapproved of, and has been held to be excluded by such slight indications of intention, that it is of small practical importance." Theobald, Wills (8 ed.) pp. 855-856.
Courts have continued to adhere to the presumption rule in form at least, even though they were of the opinion that the presumption was contrary to fact and violated the fundamental principle that the testator's intention should control. Instead of frank disavowal of the rule as being indefensible, nullification was in large measure accomplished by the numerous exceptions and distinctions mentioned. Where the rule was not nullified, it continued to set up a false presumption of fact contrary to the testamentary intention, which admittedly is the very thing that is to be ascertained in any case. Thus the presumption hindered rather than assisted the quest for truth. There can be no justification *Page 450 
for rules that do not facilitate judicial inquiry, much less for those that obstruct and defeat the process.
Many courts which profess adherence to the rule that a legacy to a creditor is presumed to be in payment of the debt have expressed the opinion that it would be better to abandon it, but have felt restrained from doing so by the doctrine ofstare decisis. See 167 Law Times, 67.
We should know that if we adopt the rule we never shall apply it as it is stated and as it is professed to be. Like other courts, we shall limit it and nullify it by exceptions and distinctions. This, for the obvious reason that we shall not be deaf to the appeals of truth, which we shall discover, even if we have to circumvent the rule. We too shall arrive at the point where the rule will remain as a form only, if that is not true now as of the time when we adopt it. But, having once adopted the rule, the doctrine of stare decisis will prevent us also from ever getting rid of it. By not adopting the rule we at least shall keep the processes for the discovery of a testator's intention free from the hindrance of false presumption, to say nothing of saving ourselves from shamefaced pretending to adhere to a rule which we in practice ignore.
We ought not adopt a rule which is contrary to sound principle, which has been utterly discredited, and which will serve no useful purpose. We should adopt the rule suggested by Surrogate Delehanty in In re Estate of Herb, 163 Misc. 441,296 N Y S. 491, that a legacy to a creditor is not to be deemed in satisfaction of a debt unless so intended by the testator, that testamentary intention is a fact question, and that the legacy, debt, other provisions of the will, and all the facts and circumstances of the case should be considered merely as factors bearing on the question of such intention.
3. The instant case comes within many of the exceptions. These have been indicated above. Hence the rule has no application here. The case was submitted under instructions which correctly stated the rules of law applicable to the fact situation. *Page 451 
4. The verdict is not excessive. This is not a case merely of collecting rents and interest, nor of incidental service rendered by a bank to its customers. Those matters were the least of the service rendered by the respondent. The evidence is uncontradicted that the Cookes made some bad investments. It appeared that they were about to lose a large part of their fortune as a consequence. They turned to respondent for assistance. He helped them to get rid of their bad investments and make good ones. Perhaps he spent too much time on the Cookes' affairs, but that was their fault as much as his. They came to the bank so often and took so much of respondent's time that the president of the bank told them that they would have to see respondent after banking hours. Respondent went to their home at least two or three evenings each week, staying there from 8:00 o'clock until 10:30 and even midnight. There is no dispute as to the amount of time he consumed in connection with their affairs. Certainly it cannot be said as a matter of law that he rendered such services as incidental to his duties as an officer of the bank or that he was not to be compensated. After deducting the disbursements, the verdict allowed respondent $350 per year. A fair estimate on the basis of the undisputed facts is that he devoted about 350 hours per year to their business. The verdict allowed him approximately one dollar per hour. We cannot say as a matter of law that the allowance is excessive. On its face it seems fair. His claim may have been too high; the verdict was not.
In my judgment the issues were ably litigated and fairly submitted. The verdict is not excessive and is amply sustained by the evidence. I think that there should be an affirmance.
MR. CHIEF JUSTICE GALLAGHER, being engaged on the pardon board when this case was argued, took no part in the consideration or decision of this case. *Page 452