## GLOVER *v.* PATTEN.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 78.   Argued January 5, 6, 1897. — Decided February 15, 1897.

An infant may affirm a contract or settlement made for her benefit, like the one here in controversy, and may sue upon it as if she were originally a party to it.

In a suit by children to establish their rights as creditors of the estate of their deceased mother other creditors are not necessary parties, as the executors or administrators represent them and guard their interests.

The bill in this case, filed by direction of the orphans' court to obtain the advice of a court of chancery upon the rights of the respective parties, discloses on its face a good cause of action in equity.

That cause of action is not barred by the Maryland statute of limitations, still in force in the District of Columbia.

Where a parent, being a debtor to his child, makes an advancement to the child, it is presumed to be a satisfaction *pro tanto* of the debt.

In a suit between devisees under a will, statements made by the deceased to counsel respecting the execution of the will, or other similar document, are not privileged.

The objection that the complainants were incompetent to testify as to their mother's statements, and as to transactions in which she took part is entitled to some weight and is not free from doubt; but such testimony is not indispensable to the maintenance of the complainants' bill.

The general bequest to her daughters in the mother's will was not an extinguishment of her debt to them.

No interest should be allowed prior to the mother's death.

This was a bill in equity filed in the Supreme Court of the District of Columbia by Mary E. Patten, Josephine A. Patten, Edith Patten and Helen Patten, against their sister, Augusta P. Glover, wife of John M. Glover, in aid of the jurisdiction of the Supreme Court as an orphans' court, to construe the will of their mother, Anastasia Patten, and to charge the estate with certain claims of the complainants prior to a general distribution of the assets.

The facts of the case are substantially as follows: Complainants and defendant Augusta P. Glover are the five daughters of Edmund Patten, late of the State of Nevada, deceased, and of Anastasia Patten, who, after her husband's death, took up her residence in Washington and died September 11, 1888, leaving a will executed in San Francisco December 23, 1879.

Edmund Patten, her husband, died November 16, 1872, intestate, his widow becoming his administratrix; and also the guardian of each of his children, all of whom were then, and for some years continued to be, minors under the age of twenty-one years. By the law of Nevada, Mrs. Patten became entitled, upon her husband's death, to one half his estate, the other half descending to his children. As administratrix and guardian, she took possession of the entire estate, and retained the same down to the time of her death. She made no accounting either as administratrix or guardian, nor did she keep any regular accounts or preserve her vouchers.

In September, 1885, apparently because of a desire on the part of the sureties on her bond, or some of them, to have her accounts settled, Mrs. Patten undertook to adjust her indebtedness to her children. She called in the services of Curtis J. Hillyer, a friend of her husband and herself, and the result was the preparation of the following document intended to take the place of a formal account and vouchers:

"Whereas our mother, Anastasia Patten, as guardian for us, received in the years 1873–'4–'5, certain amounts of money, being our portion by inheritance of the estate of our deceased father; and whereas no special separate investments of the

money so received have been made by our said guardian, but the same has been by her kept and safely invested in connection with moneys belonging to her in her own right derived from the said estate; and whereas our said guardian has up to the present date had entire charge of our maintenance and education, and has during the past thirteen years incurred a large amount. of family expenses for our benefit, of which expenses no account has been kept by her; and whereas we and our said guardian are now desirous of settling the account between us in a just and equitable manner without attempting to secure technical accuracy in such settlement; and whereas our said mother and guardian has submitted to us for inspection all accounts and papers in her possession touching or relating to the receipts and disbursements entering into such accounting, and we have personally general knowledge concerning the family expenses during said period; and whereas from such examination and knowledge we believe that by a payment to each of us by our said guardian of the sum of $101,600 an equitable settlement will be made and full justice done to each of us:

"Now, therefore, each of us for herself agrees to accept the said sum of $101,600 in full and complete settlement of all accounts, claims and demands between us and each of us and our said mother and guardian, and in full satisfaction of all claims and demands of whatever character arising out of or connected with the administration of said estate or the said relation of guardian and ward, and each of us for herself authorizes and requests that upon presentation of this agreement and a receipt for the above amount the court having jurisdiction thereof will, without further investigation of accounts so far as they concern either of us, pass the final accounts of our mother as administratrix and guardian, and by proper decree discharge those liable as bondsmen for her action in either capacity."

"(Signed)          MARY ELLEN PATTEN.
                   KATHERINE AUGUSTA PATTEN.
                   JOSEPHINE ANTOINETTE PATTEN.
                   EDITH PATTEN."

This paper was signed by all the complainants except Helen and by the defendant Augusta. Helen being then a minor did not sign it, but subsequently adopted and accepted the adjustment and settlement evidenced by the paper.

This paper was never presented by Mrs. Patten to the proper court, and it was in her possession when she died. She did not at that time pay to her children, or any of them, the sum therein mentioned in settlement of her indebtedness to them, but subsequently and in February, 1887, when her daughter Augusta was on the point of marrying her husband, John M. Glover, she assigned and transferred to her United States government bonds of the par value of $80,000 and the actual value of $102,800, with the benefit of the interest accruing thereon since the preceding 1st day of January. Then Augusta married and left her mother's home.

Mrs. Patten did not at that time pay or give her other daughters anything on account of her indebtedness to them. In the following autumn, however, namely, on October 15, 1887, she made for them and in their names an investment of the sum of $45,000, being at the rate of $11,250 for each, which the complainants claimed to have been a payment on account of her indebtedness to them. It was undisputed that the interest on this investment, from the time it was made until Mrs. Patten's death and thereafter, was always deposited in bank to the credit of the appellees and for their account.

Within a year after this transaction, namely, on September 11, 1888, Mrs. Patten died, without having done anything further towards settling her accounts as administratrix or guardian or paying her indebtedness to the appellees. It was found that she had left a will bearing date December 23, 1879, some seven years after her husband's death, and nearly six years before the preparation and execution of the paper in September, 1885.

By the terms of this will, Mrs. Patten devised and bequeathed the whole of her estate, subject to $45,000 in legacies, to her five daughters; and named as her executrices such of them as might have attained the age of majority at the time of her death and who should not be otherwise incapacitated to

undertake the trust. By virtue of the latter provision all of the daughters were appointed and qualified in the Supreme Court of the District of Columbia, as executrices, but as the will was executed in the presence of two witnesses only, it was invalid to pass real estate situate in the District of Columbia, and as the greater part of Mrs. Patten's estate at the time of her death consisted of such real estate, it descended to her daughters, as though she had died intestate.

The daughters having all qualified as executrices, and having entered upon the discharge of their duties, the appellees, claiming to be creditors of the estate of which they were also executrices, presented to the Supreme Court of the District of Columbia a petition, wherein after reciting the indebtedness of Mrs. Patten to all of her daughters, including Mrs. Glover, by reason of her guardianship, alleged that in September, 1885, the amount of her indebtedness was adjusted, settled and determined by mutual agreement (except as to Helen), evidenced by the paper writing of that month hereinbefore set forth; that Helen, being fully advised in the premises, adopted and accepted the said agreement and settlement; that by virtue of the premises Mrs. Patten became and was indebted to each of the petitioners and to Mrs. Glover, as of that date, in the sum of $101,600; that on February 17, 1887, as of January 1, 1887, Mrs. Patten paid on account of her indebtedness to Mrs. Glover $102,800, by transferring to her bonds of the United States; that afterwards Mrs. Patten paid each of the petitioners on account the sum of $11,250, and that by virtue of the premises the estate of Mrs. Patten stood indebted accordingly; but, as the petitioners were advised that they might not retain for their claims, unless passed by the court, they accordingly in their petition prayed the court to pass upon and authorize the payment of the same.

To this petition Mrs. Glover, the remaining executrix, appeared and filed an answer, admitting the inheritance by her and the complainants of the estate aforesaid from their father, and set forth in substance that the said testatrix did become guardian of the complainants and said defendant, as alleged, and did receive their said estate aforesaid as such guardian,

but that said testatrix never formally settled her accounts as such guardian, she not having been called upon so to do; that the document above set forth was drawn and signed in order to enable said testatrix formally to close her accounts as guardian aforesaid, but that the amounts agreed by the terms of said paper to be accepted by the complainants and said defendant were never paid, nor was any evidence of indebtedness given to them or any of them; and that, notwithstanding said paper, the accounts of said testatrix as guardian as aforesaid remained open at the time of her death, and the said estate of the complainants and the said defendant was dealt with by said testatrix after the execution of said paper in the same manner as before the same was so drawn and signed; that therefore, by reason of the circumstances, a trust existed on the part of the said testatrix towards the complainants and the said defendant in respect of their said estate, and that the relation of said testatrix to the complainants and the said defendant was recognized and treated by her to the day of her death as that of trustee and *cestuis que trustent* and not of debtor and creditors.

Defendant further set forth and contended that, by her last will and testament, the said testatrix devised, subject to certain bequests of comparatively trifling amount, all her estate, real and personal, as well the estate of the said defendant and the complainants held in trust for them as her own estate; that such devise operated the extinguishment, discharge and payment of any claim upon the part of the complainants in the premises; that their claims ceased to be provable as debts against the estate of said testatrix; that such alleged extinguishment, discharge and payment are not affected by the fact that the said defendant and the complainants took title to the real estate of said testatrix by descent instead of by devise, in consequence of the insufficient execution of the will; and that the several indebtednesses alleged by these complainants were never recognized or acted upon by said testatrix and no part payments were made by her on account thereof.

Upon consideration of the petition and answer, the court made an order that further action upon the petition be suspended "until said other matters whereof this court has not

jurisdiction shall be first tried and determined in the appropriate tribunal in such manner as counsel may advise."

Thereupon, on January 8, 1890, complainants filed their original bill in this cause, to which Augusta P. Glover interposed a demurrer and answer, and also filed a cross bill in which her husband joined. This was followed by a variety of answers, motions, demurrers and amendments unnecessary to be set forth in detail, as the material facts already sufficiently appear. Subsequently a considerable amount of oral and documentary evidence was taken and returned; and the cause having been transferred to the Court of Appeals of the District in pursuance of the act of Congress approved February 9, 1893, that court on November 8, 1893, entered a decree that the complainants were entitled to the relief prayed for, and that the cause be remanded to the Supreme Court with directions to enter a decree in conformity with the opinion of the court. 1 App. Cas. D. C. 466. From this decree Augusta and her husband appealed to this court.

*Mr. Charles J. Bonaparte* for appellants.

*Mr. Henry E. Davis* for appellees.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The object of this bill is to determine certain questions in aid of another branch of the same court, sitting as an orphans' court, and already in possession of a petition by the complainants to establish an indebtedness against the estate of their mother, action upon which petition was suspended by that branch of the court, awaiting the determination of these questions.

The theory of the complainants is that the amount of Mrs. Patten's indebtedness to her daughters was adjusted and settled by mutual agreement of the parties, evidenced by the instrument of September, 1885, at the sum of $102,600 each: that defendant, Augusta P. Glover, received her share upon her marriage, by a transfer of $80,000 of the United States bonds,

worth $102,800, and that the complainants received a credit in October, 1887, of $11,250 each.

The theory of the appellants is that the relation of the testatrix to her children was that of trustee, and not of debtor, and that the will, by reason of its provisions, operated the extinguishment, discharge and payment of the complainants' claims, and that said claims ceased to be provable as debts against the estate.

Several assignments of error are filed, which will be disposed of in their order.

1. That Helen was improperly joined in the bill as complainant, because she was not a party to the instrument of September, 1885. Being a minor, she did not sign the instrument, and would not have been bound by it if she had done so; but if there were any indebtedness to the children, it arose from the fact that the mother was guardian of all of them; that the law made no discrimination between them, and such indebtedness was due as much to Helen as to the others. While the instrument makes no mention of the children by name, it was evidently intended as much for her benefit as that of the other sisters, and upon her arriving at her majority, she had her election either to disaffirm it, or to adopt it as an adjustment of the amount due to herself. She chose the latter alternative, and in her petition to the orphans' court, of May 10, 1889, for the allowance of her claim, avers: "That the petitioner, Helen Patten, being fully advised in the premises, now adopts and accepts said agreement and the settlement aforesaid as though she had duly participated in the same at the time of the making thereof." An infant may affirm a contract or settlement thus made for her benefit, and may sue upon it as if she were originally a party to it. Irrespective, however, of any promise which the law might imply from the procurement by Mrs. Patten of the execution of this instrument by her daughters, if there were any indebtedness arising from her relation as guardian to her children, it existed in favor of Helen as much as the others, and as evidence of the amount of such indebtedness this document is as potent in her behalf as in that of her sisters.

·2. The second assignment, that there is a non-joinder of necessary parties defendant, is based upon the theory that there are three legatees interested in the estate to the amount of $45,000; that there is no averment that these legatees have been paid, or can be paid in full, out of the personal estate if the claims of the complainants and those of other creditors are satisfied. There is nothing in this objection. The complainants do not sue as executrices, but expressly aver that they bring the suit "in their own right" as creditors of their mother's estate, and for the purpose of establishing their debt. To such a suit other creditors are not necessary parties. The case of *Dandridge* v. *Washington's Executors*, 2 Pet. 370, 377, is directly in point. This was a suit brought by the plaintiff against the executors of the will of Mrs. Martha Washington to obtain payment of legacies bequeathed to him in her last will. In reply to an objection that the residuary legatees under the will should have been made parties, Mr. Chief Justice Marshall observed: " They have undoubtedly an interest in reducing the sum to be allowed out of it to the complainant, but they have the same interest in reducing every demand on the estate. Whatever remains sinks into the residuum, ·and that residuum is diminished as well by the claims of creditors and specific legatees as by this. In all such cases the executors represent the residuary legatees and guard their interests. It is a part of that duty which requires them to protect the interests of the estate. In such suits the residuary legatees are never made parties. To require it would be an intolerable burden on those who have claims on an estate in the hands of executors." If this be the law with respect to residuary legatees, who are necessarily and directly interested in defeating every other claim against the estate, with much greater force is the rule applicable to specific legatees, who are in much less danger of being affected by the allowance of other claims. That such legatees need not be joined is as clearly settled as that other libellants need not be joined as respondents in a suit in admiralty to establish a claim against a vessel, although they may be admitted to defend. *Wiser* v. *Blachly*, 1 Johns. Ch. 437; *Pritchard* v.

*Hicks*, 1 Paige, 270 ; *West* v. *Randall*, 2 Mason, 181 ; Daniel's Ch. Prac. c. 5, § 2.

3. That there is no equity in the bill. Defendants' position in this connection is, that the case made is an indebtedness *created* by the instrument of September, 1885, to which Helen was not a party ; that there was no agreement by Mrs. Patten to pay the sum named, or any sum whatever, and that the paper constituted a mere offer on the part of each of her children to receive a specified sum in satisfaction of her claim against her as guardian ; that this paper, therefore, is no contract, and contains no promise on the part of the mother ; that the only right which the complainants have to come into equity arose from the fact that, being executrices, they cannot sue themselves, and, therefore, cannot recover by action at law the debt due them by their testatrix ; that, if the bill failed to show that they could have sued at law during their mother's lifetime, or could now sue her executrices, were they some one else than themselves, they have no better standing in equity than at law.

This, however, is a somewhat inaccurate statement of the complainants' case. The averment of the amended bill is (paragraph 6) that in her lifetime the said testatrix was indebted to the complainants and the defendant Augusta P. Glover, by reason of the fact that they had inherited from their father an estate which was received and retained by the testatrix as their guardian, and that in " September, 1885, the amount of indebtedness of said testatrix in the premises, on account of the estate aforesaid, was adjusted, settled and determined by mutual agreement of the said testatrix on the one part, and on the other the complainants and the said defendant, except the complainant Helen Patten," who was a minor. The amended bill further avers (paragraph 12) that " it then was and for a long time theretofore had been the duty in law of said testatrix, guardian as aforesaid, to deliver to them and each of them their said estate as aforesaid, the same consisting in contemplation of law exclusively of money ; that thereby the said testatrix, as guardian aforesaid, was and had theretofore become in law the debtor of the complainants,

and the said defendant and each of them without regard to said paper so drawn and signed as aforesaid, and the said paper was only in law an adjustment, accounting and settlement between the said testatrix, guardian as aforesaid, on the one part, and the complainants and said defendant, on the other, having for its object and purpose the ascertainment of the amount of indebtedness of the said testatrix to the complainants and the said defendant and each of them."

As, under the laws of Nevada, the children were entitled to one half their father's estate, and as the mother received the entire estate and dealt with it as if she were the sole proprietor, although she was in fact guardian and trustee for her children as to their share, it requires no argument to show that she held a moiety in trust for them; was bound to account to them whenever an account was demanded, and was bound to pay to each of them one fifth of such moiety. Regularly this accounting should have been made to the court in Nevada, which granted the letters of administration, but as there was no one interested in the estate except herself and her children, she adopted the easier course of settling with them directly, and procured from them their assent to the instrument of September, 1885. While Helen was not a party to this instrument, by reason of non-age, as she stood in the same position to the estate as her sisters, and was equally a creditor of her mother, there is no reason why the instrument may not be used as an acknowledgment of her mother's indebtedness to her, as well as to the others. The fact that the sisters became executrices of their mother's will did not cancel such indebtedness, but rendered it impossible to bring an action at law, inasmuch as they would be plaintiffs in their own right and defendants as executrices. They did, however, petition the orphans' court for the allowance of their claims, making their sister, the only person interested adversely to them, a party to the proceeding. That court, instead of passing on the matter directly, thought it a proper subject for the advice of a court of chancery, and directed this bill to be filed. We are of opinion that upon its face it discloses a good cause of action.

4. That the cause of action is barred by the statute of limitations. It has always been held by the Supreme Court of Maryland that the act of 1715, which is still in force in this District, *Shepherd* v. *Thompson*, 122 U. S. 231, 234, does not apply to a claim by an executor against his estate, inasmuch as the executor cannot sue himself at law. *State* v. *Reigart*, 1 Gill, 1 ; *Brown* v. *Stewart*, 4 Md. Ch. 368 ; *Spencer* v. *Spencer*, 1 Md. Ch. 456 ; *Semmes* v. *Young's Admr.*; 10 Maryland, 242.

Irrespectively of this, however, it appears that in October, 1887, Mrs. Patten loaned $45,000 to one John E. Beall, and took a note payable to the order of the four complainants, which was subsequently paid to them. The testimony of the complainants as to this transaction is objected to upon the ground that by Rev. Stat. § 858, "in actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or settlement by the testator, intestate or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court." Conceding the statute to be applicable to this case, it does not apply to the testimony of Beall himself, who swore to making a loan of this amount from Mrs. Patten, and giving a note payable to the order of the four complainants, Mrs. Patten stating "that the money was advanced to them out of the fund belonging to them out of their father's estate, and that she wished them to have the income of that amount of money"; that "she wished the interest notes made payable at intervals of three months, so that they might have the income, and she used the words 'pin money'; and further declared that she never had made them any allowance, and she wished them to have for themselves, every three months, the interest of this money to spend for themselves." She also said "that $45,000 was being distributed in this manner to the four girls as a part of what was coming to them from their father's estate, and she said that she had made advances to Mrs. Glover." The note was subsequently paid to the four daughters. The testimony of another witness is to the effect that Mrs. Patten told him "that it was some money she

wanted to give those four girls for pin money to give them a sense of independence, .. . . . and, further, that she had already provided for the other daughter — the married daughter — quite liberally, and she thought that she ought to give these girls something."

This testimony is not only uncontradicted, but accords with the probabilities of the case. It is scarcely reasonable to suppose that Mrs. Patten, who was indebted to her daughters in the sum of over $400,000 should have advanced them the large sum of $45,000 purely as a gift, and with no intention of being credited with it upon her debt, particularly in view of her statement to the witness Beall, that she made advances to Mrs. Glover. We think this must be regarded as payment upon the account of her indebtedness, and that it removed the bar of the statute of limitations.

In aid of this construction there is the presumption that where a parent, being a debtor to his child, makes an advancement to such child, it is presumed to be a satisfaction *pro tanto* of the debt. 1 Pomeroy's Eq. Juris. § 540; *Plunkett* v. *Lewis*, 3 Hare, 316.

5. That the communications made by Mrs. Patten to the witness Hillyer were privileged, from the fact she consulted him as her legal adviser. There is some doubt as to whether she did consult him in that capacity, or simply as a friend, who had for a good many years been the attorney of her husband. It is clear that, while she visited him frequently concerning the settlement of her account as administratrix and guardian, she paid him nothing, and he made no charge against her. But whatever view be taken of the facts, we are of opinion that, in a suit between devisees under a will, statements made by the deceased to counsel respecting the execution of the will, or other similar document, are not privileged. While such communications might be privileged, if offered by third persons to establish claims against an estate, they are not within the reason of the rule requiring their exclusion, when the contest is between the heirs or next of kin. That reason is thus stated by Lord Brougham in *Greenough* v. *Gaskell*, 1 Mylne & Keen, 98, 103: "But it is out of regard

to the interests of justice, which cannot be upholden, and to the administration of justice, which cannot go on without the aid of men skilled in jurisprudence, in the practice of the courts, and in those matters affecting rights and obligations which form the subject of all judicial proceedings. If the privilege did not exist at all, every one would be thrown upon his own legal resources; deprived of all professional assistance, a man would not venture to consult any skilful person, or would only dare to tell his counsellor half his case."

In *Russell* v. *Jackson*, 9 Hare, 387, 392, the contest was between the heirs-at-law and a devisee. The heirs claimed that the devise was upon a trust, unexpressed, because illegal. It was held that a solicitor, by whom the will was drawn, should be allowed to testify what was said by the testator contemporaneously upon the subject. Vice-Chancellor Turner, in delivering the opinion of the court, observed: "In the cases of testamentary dispositions, the very foundation on which the rule proceeds seems to be wanting; and in the absence, therefore, of any illegal purpose entertained by the testator, there does not appear to be any ground for applying it. . . . That the privilege does not in all cases terminate with the death of the party, I entertain no doubt. That it belongs equally to parties claiming under the client as against parties claiming adversely to him, I entertain as little doubt; but it does not, I think, therefore follow that it belongs to the executor as against the next of kin, and in such a case as the present. In the one case the question is, whether the property belongs to the client or his estate, and the rule may well apply for the protection of the client's interests. In the other case the question is, to which of two parties claiming under the client the property in equity belongs, and it would seem to be a mere arbitrary rule to hold that it belongs to one of them rather than to the other."

An epitome of this case is given in the opinion of Mr. Justice Swayne in *Blackburn* v. *Crawfords*, 3 Wall. 175, 193, in which case, on a question of marriage and legitimacy, an attorney who drew the will for the alleged husband, in which the children of the connection set up as wedlock were described

as the natural children of the testator, might testify as to what was said by the testator about the character of the children and his relations to their mother, in interviews between himself and the testator preceding and connected with the preparation of the will.

As was said in that case, page 194, " the client may waive the protection of the rule. The waiver may be expressed or implied. We think it as effectual here by implication as the most explicit language could have made it. It could have been no clearer if the client had expressly enjoined it upon the attorney to give this testimony whenever the truth of his testamentary declaration should be . challenged by any of those to whom it related. A different result would involve a perversion of the rule, inconsistent with its objects and in direct conflict with the reason upon which it is founded." See also *Hunt* v. *Blackburn*, 128 U. S. 464, 470.

The same rule has been applied in several cases in the state courts: *Layman's Will*, 40 Minnesota, 371; *Scott* v. *Harris*, 113 Illinois, 447; *Graham* v. *O'Fallon*, 4 Missouri, 338; Wharton on Evidence, § 591; *Goddard* v. *Gardner*, 28 Connecticut, 172; Weeks on Attorneys, § 165.

6. The objection that the complainants were incompetent to testify as to their mother's statements, and as to the transactions in which she took part, is entitled to some weight, and is not free from doubt. There is much reason, however, for saying that, as the object of this testimony was not to prove complainants' claim against the estate, but to show that their sister Augusta had had a similar claim, and had been paid, and the testimony related to conversations between Mrs. Patten and her daughter Augusta, the statute did not apply — in other words, that it was not a transaction with or a statement by the testator within the meaning of the statute. *Monongahela National Bank* v. *Jacobus*, 109 U. S. 275; Wharton on Evidence, § 468.

We do not, however, consider this testimony indispensable to the maintenance of complainants' bill. Discarding it for the present from our consideration of the case, there is no doubt that Mrs. Patten became the guardian and trustee for

her children to the extent of one half her husband's estate; that she rendered no account of her stewardship; that, at the suggestion of the witness Hillyer, she procured the document of September, 1885, to be drawn up and signed by her daughters; that by this instrument each of the daughters, except Helen, agreed to accept the sum of $101,600 in full and complete settlement of their accounts, claims and demands between each of them and their mother, arising out of or connected with the administration of their father's estate, and requested that, upon the presentation of this agreement and a receipt for that amount, the court having jurisdiction would, without further investigation, pass the final accounts of their mother as administratrix and guardian, and discharge her bondsmen. There is no doubt, too, that in the month of February, 1887, Mrs. Patten called at the bank of Riggs and Co. and inquired of a member of the firm what amount of bonds, with the premium added, would make up a sum somewhat over $100,000, stating that "her purpose was to transfer these bonds to one of her daughters about to be married"; that he furnished her the necessary figures, "somewhere in the neighborhood of $79,000, which made up about the amount she wished to use," and that he gave her a memorandum of them; that Mrs. Patten told him afterwards that she put these bonds under her daughter's plate, and that she went off and forgot them. The testimony of the complainants, which for this purpose is competent and uncontradicted, was that Mrs. Glover asked the witness Josephine on one occasion, when she had returned home, where she had been; that she replied that she had been to the Treasury, where her mother went to transfer her bonds to her name to the amount of $80,000, to which Mrs. Glover said, "that is not enough." Josephine replied: "It is too much; if I had not been there you would have gotten but $79,000"; that she saw the bonds in the possession of her sister, Mrs. Glover, who returned them to her mother with a request that she should keep them for her, and that they were subsequently sent to her at St. Louis by registered mail; that Mrs. Glover repeatedly said to her sisters that "when she was married she would ask for her money; that she had

a right to it, and she would ask for it," and that she repeatedly admitted afterwards having received her share of her father's estate. This admission is sworn to by each one of the complainants, and is entirely uncontradicted.

The court below was of opinion that, upon this state of facts, the complainants were entitled to the relief prayed, and in this opinion we concur. We can come to no other conclusion than that, upon the undisputed facts of the case, there was an indebtedness by Mrs. Patten to her daughters; that such indebtedness was liquidated by the agreement of September, 1885, and that the defendant Mrs. Glover received an amount in bonds which, at their market value, was somewhat greater than $100,000. As this payment was made to her upon the eve of her marriage, and as the amount was evidently computed as near as could be to the amount of the indebtedness, as stated in the agreement of September, 1885, the presumption is that it was intended as an advance and as a satisfaction of the debt. 1 Pomeroy's Eq. Juris. § 540; *Plunkett* v. *Lewis*, 3 Hare, 316.

7. The claim that the general bequest to her daughters, contained in Mrs. Patten's will, was an extinguishment of her debt to them, is equally unfounded. The appellants rely, in this connection, upon the general proposition that, where a debtor bequeathes to his creditor a legacy equal to or greater than the amount of his debt, it shall be presumed, in the absence of a contrary intent inferable from the will, that the legacy was intended to be in satisfaction of the debt. Had Mrs. Patten, subsequent to the execution of the agreement of September, 1885, made special bequests to her daughters, or either of them, of amounts equal to or greater than the amount of her indebtedness to them, the rule might, perhaps, be invoked as an answer to their claim; but the rule is in fact nothing more than a presumption, and may be rebutted by slight evidence that such was not the intention of the testator. *Spencer* v. *Spencer*, 4 Md. Ch. 456; *Gilliam* v. *Brown*, 43 Mississippi, 641; *Williams* v. *Crary*, 4 Wend. 443; *S. C.* 5 Cow. 368; *Eaton* v. *Benton*, 2 Hill, 576; *Reynolds* v. *Robinson*, 82 N. Y. 103; *Heisler* v. *Sharp*, 44 N. J. Eq. 167; *Horner's Ex-*

*ecutors* v. *McGaughy*, 62 Penn. St. 189; *Crouch* v. *Davis'
Executors*, 23 Gratt. 62. These cases hold that the mere fact
that the debt was unliquidated is enough to rebut the presumption.

It requires no argument to demonstrate that the rule has
no application to a case where the bequest is a general one
— all of the property of the testator "to be divided between
them share and share alike" — and the will is made six years
before the indebtedness is liquidated. That Mrs. Patten evidently did not consider her debt to her daughter Augusta
extinguished by the will is evident from the fact that she
paid the amount at the time of the marriage of her daughter,
and there is no reason to suppose that she intended to treat
her differently from her other daughters. Evidently the
whole theory of a debt being extinguished by a bequest presupposes a bequest subsequent to the indebtedness, and while
the indebtedness may have been said to have arisen in this
case upon the receipt of the children's moiety of their father's
estate, it was never treated by any of the parties in the light
of an indebtedness, until the amount had been liquidated by
the arrangement of September, 1885.

The effect of rejecting the claim of the complainants would
be to prefer Mrs. Glover to her sisters to the extent of
$102,800, when there is absolutely nothing in the will of the
mother, in the arrangement of September, 1885, or in the facts
or circumstances of the case, to indicate that this was ever
contemplated by Mrs. Patten, or by the daughters themselves.
The instincts of a mother would naturally lead her to put her
daughters upon an exact equality, and the case is manifestly
one for the application of the legal maxim that "equality
is equity." That it ever entered her mind that one of her
daughters should be preferred to the others in the very large
sum of $102,800 is extremely improbable.

8. Whether the fact that Mrs. Glover had been paid her
share of the indebtedness was strictly pertinent to the issue
or not, it was alleged in the bill and in the amended bill,
was first demurred to, and then denied in the additional answer. The fact had some tendency to prove that the indebt-

edness, which was incurred and liquidated in favor of all the sisters under the same circumstances, was a genuine one, was recognized both by the testatrix and Mrs. Glover as such, and that the bill was not an attempt on the part of the complainants to obtain a preference over their sister.

It would have been more satisfactory if the defendant had offered herself as a witness, and given her version of the transaction, or at least had put forward some testimony tending to show a different theory; but as she preferred to rest her case upon the testimony of the complainants, and as the facts proved are susceptible of but one construction, we can only assent to the conclusion of the court below.

The fact that Mrs. Patten did not pay, or agree to pay, her daughters interest upon the amount of her indebtedness as liquidated, is urged as a reason for holding that she continued to regard herself as trustee for her children in respect to their share of their father's estate, and never contemplated that an indebtedness to them had been recognized. This, however, seems inconsistent with the instrument of September, 1885, which was evidently prepared for a purpose and was wholly unnecessary, if her relation to her daughters were solely that of a trustee for their benefit. If it were for the purpose of fixing her liability, for which the sureties upon her bond were to be responsible, it would scarcely be consistent to hold that, so far as concerned her relations with her daughters, it was not intended to create a liability. It either created a liability or it did not. If it did, it was a liability to her children. If it did not, the instrument was useless.

It is true that no interest, as such, was paid or promised, but as an offset to that the daughters were never charged with their expense of maintenance, although most of them were of age. What the result would have been, if an account had been regularly opened and interest credited to each daughter and a charge made against each for her maintenance, we can only conjecture; but in the loose way in which business is usually done between members of the same family and household, it is not singular that no such account was kept. If Mrs. Glover had not received her share, it would make but

little practical difference whether the agreement of September, 1885, were treated as an operative instrument, or merely one for the purpose of satisfying the sureties on the administratrix's bond. As the effect of the latter construction would be to prefer Mrs. Glover to this amount over her sisters, the court will construe it as the parties themselves have construed it. It is apparent from what has been said that no interest should be allowed prior to the death of Mrs. Patten.

The decree of the court below is, therefore,

*Affirmed.*