IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 2000 Session

## IN THE MATTER OF: THE ESTATE OF J.C. QUEENER, DECEASED, JEFF W. POWELL and EDWIN H. ARNOLD, v. ELAINE HELTON, KENNY STEVENS and ELIZABETH KELLEY

**Direct Appeal from the Probate Court for Loudon County**
**No. 2363     Hon. William H. Russell, Judge**

**FILED MAY 12, 2003**

**No. E2002-02311-COA-R3-CV**

Trial Court entered Judgments against Estate for claimants on theories of resulting and/or constructive trusts, finding decedent's intent from a draft copy of Will never executed. On appeal, we affirm in part and reverse in part.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part, Reversed in part, and Remanded.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and WILLIAM H. INMAN, SR.J., joined.

James H. Harris, Lenoir City, Tennessee, for Appellant.

Louis Hofferbert, Knoxville, Tennessee, for Appellee, Elaine Helton.

Kenneth W. Holbert, Knoxville, Tennessee, for Appellee, Kenny Stevens.

Charles Dungan, Maryville, Tennessee, for Appellee, Elizabeth Kelley.

**OPINION**

This appeal involves claims made against the Estate by Arlen Kelley who sought $50,000.00 for personal services and asked that a "constructive trust" be imposed on the assets of the Estate for that amount; Elaine Helton made a claim against the Estate for personal services for more than twenty years, based on quantum meruit, and also asked that a constructive trust be

imposed on the Estate; Elizabeth Kelley filed a claim for personal services for $100,000.00 against the Estate, and Kenny Stevens filed a claim for personal services and asked that a constructive trust be imposed upon the Estate for $250,000.00.

Following trial, the Trial Court filed an Opinion and held that the deceased had fostered a relationship with Elaine Helton which lasted for more than twenty years, and chose to support and care for Ms. Helton and her children. The Court found the decedent had expressed the intention to provide for Ms. Helton during her lifetime and after his death, and that decedent had paid for Ms. Helton's residence and conveyed it to her, and that he also put her name on a CD worth $106,000.00 which became hers upon his death. The Court further found that it was decedent's intent to provide for Ms. Helton in his "will", but he died before the "will", which had been prepared by his lawyer, could be executed. The Court held the document was not a valid Will, but he treated it as evidence of decedent's intentions, along with other proof and essentially awarded her what the document had provided. The Court held there was a resulting trust for Ms. Helton which consisted of the bulk of the Estate, minus certain items.

The Court found that Mr. Stevens' claim "in the amount of $250,000.00 is well taken and granted and supported by the proof."

The Court found that Arlen Kelley's claim was not supported by the proof and denied that claim, but found that Elizabeth Kelley's claim was well taken and supported by the proof and awarded her a house and one acre on decedent's farm off Highway 72 in Loudon, Tennessee.

The administrators have appealed from these awards.

Claimant Helton testified that she had lived with decedent since around 1980 and they lived as man and wife. She testified that she had various jobs during those years, but decedent did not want her to work. She testified that she cooked for the decedent and took care of his mother, and worked at his shop for a while. She testified that she did laundry, kept house some, worked on his farm, and in return decedent took care of her and that he "done everything for me". She testified that she had a sexual relationship with defendant and that decedent was 22 years older than she was, and she knew that decedent would probably die before she did, and she expected that he would take care of her. She further testified that she also worked in decedent's business, Queener Appliances, but received no compensation for this work. She offered other witnesses corroborating her services.

Kenny Stevens testified that he had known decedent since he was 8 years old, and lived very close to decedent's business. He testified that he had worked for decedent for a while in high school, and also later when he was laid off from his other job. He further testified that he went to work for Viskase and was on a rotating shift, but he still helped decedent in his business part-time. He also stated that he had worked for Viskase for 30 years, and helped decedent out during the whole time, and further estimated that his hourly wage during the time he worked for Viskase was $10.00 per hour. Stevens testified that he did not expect to be paid for the things he did for decedent, but filed a claim based upon the unexecuted Will, because that's what decedent wanted him to have.

Elizabeth Kelley testified that her family moved into a house in 1970 owned by decedent, and that the house was in poor condition and had no bathroom. She testified they paid no rent and that her family improved the house by adding a bedroom, enlarging other rooms and putting water and adding a bathroom to the house, and that she and her husband paid for the improvements. She further testified that she and her family helped in the three gardens on the property and helped with the cattle and whatever else was needed. She testified the decedent's mother moved in with her the last years of her life and she cooked for her and cared for her.

Claimants called Edward Arnold as a witness, and he testified that he was a practicing attorney and had known the decedent since 1958. Arnold testified that decedent was in the hospital a week before he died, and that he asked Arnold to come to the hospital and meet with decedent. Over the objection of the administrators, Arnold testified that decedent asked him to draft a Will and advised him as to the beneficiaries and the amounts to be given. He stated that he drafted the Will but decedent died before he could return with the Will and have it properly executed. He testified that no one was present when he met with decedent to discuss the contents of the Will. The draft of the Will was admitted into evidence by the Trial Court, over the objection of the administrators.[1]

The Estate raises these issues on appeal:

1.      Whether the Trial Court erred in admitting decedent's attorney's testimony, protected by the attorney-client privilege?

2.      Whether the Trial Court erred in finding a resulting trust in favor of Elaine Helton?

3.      Whether the Trial Court erred in finding merit in the claim of Kenny Stevens?

4.      Whether the Trial Court erred in finding merit in the claim of Elizabeth Kelley?

---

[1]The draft of the Will provides in pertinent part:

THIRD:      I give, devise and bequeath to KENNY STEVENS, the sum of two hundred fifty thousand dollars ($250,000.00).

FOURTH:      I give, devise and bequeath to ARLIN KELLY, the house where he resides and one acre of land.

After other bequests, the draft provides:

SIXTH:      All the rest, residue and remainder of my estate, both real and personal, I give devise and bequeath to ELAINE HELTON.

-3-

The Estate argues that it was error for the Trial Court to admit the testimony of Edwin Arnold and the document prepared by him regarding the conversations he had with decedent prior to his death, because the evidence is protected by the attorney-client privilege.  The Supreme Court has long accorded privilege to certain communications between attorneys and their clients, while recognizing there are exceptions to this privilege.  *Hazlett v. Bryant*, 241 S.W.2d 121, 123 (Tenn. 1951).  The United States Supreme Court in *Swidler & Berlin v. U.S.*, 524 U.S. 399, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998) held that the attorney-client privileges survives the death of the client.  However, the claimants rely on the United States Supreme Court of *Glover v. Patten*, 165 U.S.397 17 S.Ct. 411, 41 L.Ed2d 60 (1897) which set forth this rule:

> ... we are of the opinion that, in a suit between the devisees under a will, statements made by the deceased to counsel respecting the execution of the will, or other similar document, are not privileged.   While such communications might be privileged if offered by third persons to establish claims against an estate, they are not within the reason of the rule requiring their exclusion, when the contest is between the heirs or next of kin.

165 U.S. at 406, 17 S.Ct. At 411.

This evidence here was offered by third persons to establish claims against the Estate, which is an exception contained in the quoted Rule.

Claimants also rely on the *Estate of Hamilton v. Morris*, 67 S.W.3d 786 (Tenn. Ct. App. 2001).  The reliance on that case is misplaced.  The *Hamilton* case involved a will contest involving two wills that had been executed by the testatrix.  The Court allowed the testimony communicated by the client to the attorney who drew the wills, and said: "The allowance of the exception is to help establish the intent of the testatrix or testator . . .".
The *Hamilton* Court also quoted with approval from 81 AmJur.2d Witnesses, § 389:

> Where the client is dead and the controversy arises concerning the validity of the deceased client's will, or between the claimants thereunder, no privilege exists as to communications between the testator and his attorney concerning the drafting of a will.   Thus, communications by a client to the attorney who drafted his will, concerning the will and transactions leading to its execution, generally are not, after the client's death, protected as privileged communications in a suit between the testator's heirs, devisees, or other parties who claim under him, although there is authority for the proposition that the privilege protecting a client's communications to the attorney who drew his will may be invoked against claimants adverse to the interests of the client, his estate, or his successors.

.

-4-

In this case, the claims presented are against the Estate, and the issue is not concerning the validity of the deceased's Will or claimants thereunder. In this case, no Will of the deceased has been admitted to probate, indeed the record indicates that only a draft of a proposed will was prepared by the attorney. Accordingly, the rationale for the exception by the *Hamilton* Court that this evidence would be admitted to help establish the intent of the maker of a will has no application to the facts of this case.

The Trial Court found the draft document was not a valid will and could not be treated as one, but that it could be treated as evidence of decedent's intentions. The evidence does not establish a basis for an exception to the privilege and the Court was in error to rely on the unexecuted document to establish deceased's intent.

As to the Trial Court's finding a resulting trust in favor of Ms. Helton. Our Supreme Court has explained a resulting trust as follows:

> The imposition of a resulting trust is an equitable remedy; the doctrine of resulting trust is invoked to prevent unjust enrichment. Such a trust is implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises. Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and there ordinarily being no fraud or constructive fraud involved.
>
> While resulting trusts generally arise (1) on a failure of an express trust or the purpose of such a trust, or (2) on a conveyance to one person on a consideration from another--sometimes referred to as a "purchase-money resulting trust"--they may also be imposed in other circumstances, such that a court of equity, shaping its judgment in the most efficient form, will decree a resulting trust--on an inquiry into the consideration of a transaction--in order to prevent a failure of justice.

*In re Estate of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993). The Supreme Court went on to state, "While an implied or resulting trust may be established by parol evidence, yet both upon reason and authority the courts will not enforce it, unless it be established by the most convincing and irrefragable evidence. In other words, it must be sustained by proof of the clearest and most convincing character." *Id.* at 402.

Resulting trusts are typically found where there is evidence that someone is "holding" property that is in his or her name for the benefit of another, or where the beneficiary of the trust has paid money toward and/or worked toward property that is in someone else's name with the agreement that the property would become the beneficiary's property. *See Wardell v. Dailey*, 674

S.W.2d 293 (Tenn. Ct. App. 1983); *Saddler v. Saddler*, 59 S.W.3d 96 (Tenn. Ct. App. 2000). As our Court has explained:

> A resulting trust arises from the nature of circumstances of consideration involved in a transaction whereby one person thereby becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and although there is an absence of fraud or constructive fraud.

*Rowlett v. Guthrie*, 867 S.W.2d 732, 735 (Tenn. Ct. App. 1993). Further, there must be a showing that the beneficiary "actually made payment, or incurred an absolute obligation to pay, as part of the original transaction of purchase", and subsequent conduct of the beneficiary that is independent of the original transaction will not raise a resulting trust. *Id*. at 735.

This case is factually similar to the case of *Rowlett v. Guthrie*, 867 S.W.2d 732 (Tenn. Ct. App. 1993), wherein the plaintiff lived with the decedent, made improvements to her property, and helped support her, and thus filed a claim against her estate based on resulting or constructive trust. Regarding the claim of resulting trust, the court held that decedent owned the property before plaintiff moved in with her, and that any improvements he made were independent and apart from the original transaction. *Id.* The court stated that there was no proof of any agreement, except that if plaintiff helped fix the property, decedent would sell it and they would move to Florida. *Id.* The court thus ruled that there was no proof to establish a resulting trust. Similarly, here, Ms. Helton's relationship with decedent was independent and separate from any transactions he made regarding his property, and there was no proof of any consideration provided by her toward any property in the estate. We reverse the establishing of an equitable trust by the Trial Court for Ms. Helton.

Regarding the claim filed by Kenneth Stevens, the Court simply found that it was "well taken and granted and supported by the proof". The Court did not detail what proof it relied upon, nor the legal theory upon which the claim stood. The claims filed by Mr. Stevens, however, were based on a theory of constructive and/or resulting trust. The requirements of a resulting trust are detailed above, and again, the evidence preponderates against establishing such a trust in Stevens' favor. Tenn. R. App. P. 13(d).

Similarly, there is insufficient proof to establish a constructive trust for Mr. Stevens' benefit. A constructive trust requires some element of fraud, concealment, duress, etc., such that a person has obtained property "which he ought not, in equity and good conscience, hold and enjoy." *Roach v. Renfro*, 989 S.W.2d 335, 341 (Tenn. Ct. App. 1998). Such a trust may be imposed where:

> 1) a person procures the legal title to property in violation of a duty to the actual owner;
>
> 2) the title to property is obtained by some inequitable means;

3) a person makes use of some influence in order to obtain title on better terms than it otherwise would have been obtained;

4) a person acquires property with notice that someone else is entitled to its benefits.

*Id.* at 341.

There has been no showing of these elements by Mr. Stevens. What was shown was that Mr. Stevens was "on call" for decedent basically 24 hours per day, to do whatever decedent needed him to do, but Stevens testified that he did this out of friendship, and did not expect compensation. Even if he wanted to proceed under a quantum meruit theory, the authorities do not establish such a basis on the evidence before us. *See Haynes v. Dalton*, 848 S.W.2d 664, 666 (Tenn. Ct. App. 1992), *quoting Estate of Atkinson v. Allied Fence*, 746 S.W.2d 709, 711 (Tenn. Ct. App.1987); *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995).

The evidence preponderates against Mr. Stevens' claim against the Estate and the Judgment of the Trial Court is reversed. Tenn. R. App. P. 13(d).

The Estate also asserts that the claim of Elizabeth Kelley was erroneously granted by the Trial Court. The Court found that "the claim of Elizabeth Kelley is well taken and granted and is supported by the proof, for the house and 1 acre more or less on the Decedent's farm off Highway 72, Loudon." Ms. Kelley's original claim was based on an express or implied contract with decedent, and on her services rendered to decedent and his mother. Ms. Kelley later amended her claim to add the theory of resulting trust.

While the Court did not state a basis for upholding Ms. Kelley's claim, Ms. Kelley and others testified that she and her family moved into the small house on decedent's property in 1970, and lived there until and after decedent's death. The proof showed the family helped decedent take care of his property, made significant improvements and repairs to the house they lived in (and paid for them), and cared for decedent's ailing mother for several years. While the Kelleys lived in the house rent-free, the proof showed that they expected something more in return. Both Ms. Kelley and her son testified that decedent promised that the house would be hers, and that she thus expected to receive some further compensation. There was other proof that decedent had said the Kelleys would always have a place to live, and that he was going to give the house to Ms. Kelley because she took care of his mother.

This claimant demonstrated that she provided valuable services to decedent, and improvements to the property, and expected to be compensated, and that it would be unjust not to compensate her for her services. We find that there is ample evidence to support the Trial Court's award, either under a quantum meruit or implied contract theory, and we affirm the Trial Court's Judgment on this claim.

The Judgment of the Trial Court is affirmed in part, reversed in part, and the cause remanded, with the cost of the appeal adjudged one-half to the Estate and one-half to Elaine Helton and Kenny Stevens.

_____
HERSCHEL PICKENS FRANKS, J.