**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2276
_____

ALEXIS KYRIAKOPOULOS

v.

ROBERT Z. MAIGETTER, INDIVIDUALLY AND AS
EXECUTOR OF THE ESTATE OF BARBARA J. BEROT,
DECEASED; SARAH A. EASTBURN, ESQUIRE;
EASTBURN & GRAY, P.C.

Robert Z. Maigetter,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:21-cv-03887)
District Judge: Honorable Anita B. Brody
_____

Argued: September 5, 2024

Before: JORDAN, HARDIMAN, and PORTER, *Circuit
Judges*.

(Filed: November 20, 2024 )

Madeline Hamilton
OFFIT KURMAN
401 Plymouth Road
Suite 100
Plymouth Meeting, PA 19462

C. Lawrence Holmes **[Argued]**
OFFIT KURMAN
1801 Market Street
Ten Penn Center
Suite 2300
Philadelphia, PA 19103
 *Counsel for Appellant Robert Z. Maigetter*

Glen H. Ridenour, II **[Argued]**
KLENK LAW
101 Greenwood Avenue
Suite 360
Jenkintown, PA 19046
 *Counsel for Appellee Alexis Kyriakopoulos*

————————————

OPINION OF THE COURT

————————————

PORTER, *Circuit Judge*.

Robert Z. Maigetter appeals the District Court's order holding that certain communications between Maigetter and

his attorney Sarah A. Eastburn were not covered by the attorney-client privilege and ordering their production. The District Court found that the communications were probative of the intentions of Barbara J. Berot, Maigetter's deceased wife, and therefore subject to the testamentary exception to the attorney-client privilege. Recognizing that its application of the doctrine was novel, the District Court certified for appeal a narrow question on the scope of the testamentary exception. Because the District Court's approach would expand the traditional bounds of the exception, we will vacate its ruling and remand for further proceedings.

## I. FACTS AND PROCEDURAL BACKGROUND

Maigetter and Berot jointly owned a co-op apartment in southwest Washington, D.C. The couple allowed Berot's son, Alexis Kyriakopoulos, to use the apartment. In 2019, Berot was diagnosed with terminal pancreatic cancer, touching off a flurry of estate planning. Eastburn, acting as joint counsel for Maigetter and Berot, drafted parallel wills which the couple executed. Berot made plain during this period that she wished for ownership of the co-op to pass to Kyriakopoulos, though the terms of her will did not clearly allow such an outcome if Berot predeceased Maigetter.

Berot passed away in May 2020. Following Berot's death, Maigetter contacted Eastburn seeking advice about the estate. The two exchanged several emails on the subject.

This case arose when Kyriakopoulos sued Maigetter, not to contest Berot's will, but to enforce an alleged contract to will. Kyriakopoulos maintains that Maigetter, sometime before Berot's death, entered into an agreement with Berot under which the Washington co-op would pass to Kyriakopoulos. In

3

his efforts to prove that claim, Kyriakopoulos obtained copies of communications between Berot, Maigetter, and Eastburn prior to Berot's death.

Kyriakopoulos wanted more. He requested that Maigetter produce his communications with Eastburn following Berot's death. Maigetter objected, asserting that the communications were protected by the attorney-client privilege. Kyriakopoulos moved to overrule those objections and compel production. The District Court, following *in camera* review, granted the motion as to twelve of the disputed emails. The District Court found that those communications included discussions of Berot's intentions in relation to her will. Accordingly, the District Court held that the testamentary exception applied to overcome Maigetter's assertion of privilege.

Maigetter moved to certify the District Court's order for interlocutory review. The District Court granted the motion, because, pursuant to 28 U.S.C. § 1292(b): (1) its order involved a controlling question of law; (2) there was substantial ground for difference of opinion on that question of law; and (3) an immediate appeal from the order may materially advance the resolution of the litigation. The District Court accordingly certified its order for our review, presenting a narrow question: "whether the testamentary exception applies only to communications made by the deceased; or, additionally, to communications made by others which discuss statements made by the deceased and are probative of the deceased's intent." J.A. 0047.

4

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court has jurisdiction under 28 U.S.C. § 1332. We have jurisdiction for this interlocutory appeal under 28 U.S.C. § 1292(b).

Appellate review of motions to compel and similar discovery disputes is generally for abuse of discretion. *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661 (3d Cir. 2003). But "review is plenary where the decision was based upon the interpretation of a legal precept." *Id.* As required by 28 U.S.C. § 1292(b), and as confirmed by the District Court's certification order, the decision on appeal "involves a controlling question of law." J.A. 0047. Our review is therefore plenary.

## III. DISCUSSION

### A. History of the testamentary exception.

The attorney-client privilege, "one of the oldest recognized privileges for confidential communications," needs little introduction. *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998); *see also Haines v. Ligget Grp. Inc.*, 975 F.2d 81, 89–90 (3d Cir. 1992). "The privilege is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Swidler*, 524 U.S. at 403 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The privilege is subject to a few narrow exceptions including, at issue here, the testamentary exception.

The Supreme Court applied the testamentary exception in the early case of *Blackburn v. Crawford's*, 70 U.S. (3 Wall.) 175, 192–94 (1865), and further explored the history and scope

of the exception in *Glover v. Patten*, 165 U.S. 394, 406–08 (1897). The *Glover* Court began with a general statement of the scope of the exception: "[I]n a suit between devisees under a will, statements made by the deceased to counsel respecting the execution of the will, or other similar document, are not privileged." *Glover*, 165 U.S. at 406. The Court then surveyed English common-law precedent, discussing the underlying justifications for the attorney-client privilege and why those justifications might apply with less force in the testamentary context. *Id.* at 406–07.

Citing to *Blackburn*, the Court described the exception as effecting an implied waiver of privilege by the deceased client. *Id.* at 407–08. The logic goes something like this: Take as axiomatic that a testator wants his wishes executed accurately. Further assume that he discussed those wishes with his attorney while preparing his will. Now imagine that after the testator's death "the truth of his testamentary declaration should be challenged by any of those to whom it related." *Blackburn*, 70 U.S. at 194. As scrivener of the will, the testator's attorney could have information that would resolve the dispute, but he would ordinarily be bound by the attorney-client privilege to keep mum.

Who wins in a conflict between the deceased client's interest in confidential communications and his desire that his testamentary intentions be fulfilled? The deceased's intentions, in a rout. Indeed, "[i]t could [be] no clearer if the client had expressly enjoined it upon the attorney to give this testimony." *Id.* Enforcing the attorney-client privilege in such a circumstance "would involve a perversion of the rule, inconsistent with its object, and in direct conflict with the reasons upon which it is founded." *Id.* The testamentary exception thus steps in to waive the privilege, permit the attorney to testify about

the earlier communications, and thereby "further[] the client's intent." *Swidler*, 524 U.S. at 405.

The *Glover* Court noted that the testamentary exception had been recognized and applied in several state cases. *Glover*, 165 U.S. at 408 (citing cases in Minnesota, Illinois, Missouri, and Connecticut). Today, many states have formally adopted aspects of the exception by statute or rule. *See, e.g.*, Ala. R. Evid. 502; Cal. Evid. Code § 957; Neb. Rev. Stat. § 27-503. Many others have long recognized and applied it in their state courts. *See, e.g.*, *Wesp v. Everson*, 33 P.3d 191, 200–02 (Colo. 2001) (en banc); *Zook v. Pesce*, 91 A.3d 1114, 1120 (Md. 2014); *Eizenga v. Unity Christian Sch. of Fulton*, 54 N.E.3d 907, 913–14 (Ill. App. Ct. 2016). A few have had little or nothing to say on the subject. *See, e.g.*, *In re Est. of Covington*, 450 F.3d 917, 925–26 (9th Cir. 2006) (noting that Washington state has not formally recognized the exception).

Pennsylvania is in the latter category.[1] One Pennsylvania court, looking to federal precedents, has applied the testamentary exception, finding it proper "in any case where a deceased holder of the attorney-client privilege is suspected of having been unduly influenced to change the planned disposition of his estate after his death." *In re Thevaos Estate*, 10 Pa. D. & C.5th 481, 487–88 (Pa. Ct. Com. Pl. 2010). Whether Pennsylvania will embrace the testamentary exception more fully we need not say, because the parties here are content to assume that the exception, as traditionally understood, applies in Pennsylvania, and therefore to this dispute.

---

[1] Berot's will was probated in the Pennsylvania Court of Common Pleas; Kyriakopoulos initiated this suit in the Eastern District of Pennsylvania.

### B. Application of the exception to this case.

The District Court, following *in camera* review, found that twelve of the sought-after emails fit within the testamentary exception as described in *Glover*. The Court found that the emails "discuss[ed] 'statements made by the deceased,' Barbara J. Berot, 'to counsel,' Sarah Eastburn, 'respecting the execution of the will.'" J.A. 0042–43 (quoting *Glover*, 165 U.S. at 406). Disclosure of the emails would "further[] the client's intent," in accordance with the rationale behind the testamentary exception, "weigh[ing] heavily in favor of its application in this instance." J.A. 0043 (citing *Swidler*, 524 U.S. at 406).

As noted above, the District Court certified the narrow question of "whether the testamentary exception applies only to communications made by the deceased; or, additionally, to communications made by others which discuss statements made by the deceased and are probative of the deceased's intent." J.A. 0047. In its certification order, the Court stated that it had "not located any authority, controlling or otherwise, that addresses whether the testamentary exception may apply to communications made by someone other than the deceased herself." *Id.*

We conclude that the District Court's application of the testamentary exception exceeds the traditional bounds of the doctrine and will vacate the order. In particular, we find that the facts here are a poor fit for the "what," "why," and "who" of the testamentary exception.

8

Start with the "what"—to what kind of dispute is the testamentary exception applied? As discussed in *Glover*, and in the English common-law cases described there, the heartland of the testamentary exception is "a suit between devisees under a will." *Glover*, 165 U.S. at 406; *see also United States v. Osborn*, 561 F.2d 1334, 1340 (9th Cir. 1977) (testamentary exception applies "in litigation between the testator's heirs, legatees, devisees, or other parties, all of whom claim under the deceased client"). Some courts have applied the exception to "similar types of cases" implicating the same rationale for disclosure. Restatement (Third) of the Law Governing Lawyers § 81 cmt. b (2000). For example, in *Eizenga v. Unity Christian School of Fulton*, an Illinois appellate court applied the testamentary exception to settle a dispute between putative beneficiaries of a trust. 54 N.E.3d at 914–15. By contrast, the exception rarely reaches claims arising in contract outside the bounds of an estate dispute. *See Clark v. Second Jud. Dist. Ct.*, 692 P.2d 512, 515–16 (Nev. 1985) (collecting cases from Connecticut, Wisconsin, Georgia, Indiana, Kentucky, and Missouri).

Kyriakopoulos did not contest Berot's will when it was probated in the Pennsylvania Court of Common Pleas. Nor does this case directly concern the contents or meaning of Berot's will. Rather, Kyriakopoulos seeks to enforce an alleged "contract to will"—that is, an extrinsic, unwritten agreement allegedly reached between Berot and Maigetter during their joint estate planning. Kyriakopoulos argues that his claim is like those in cases within the bounds of the testamentary exception. We disagree. Even assuming that the Pennsylvania Supreme Court were to adopt the testamentary exception, Kyriakopoulos's case falls outside the traditional heartland of will contests between devisees.

Next consider the "why"—for what purpose is the testamentary exception applied? In the heartland scenario, two claimants under a will each assert that the deceased intended to especially favor them. The deceased being unavailable to clarify her true intentions, the testamentary exception steps in to allow the deceased's attorney to do the job. *See Swidler*, 524 U.S. at 405.

Here, the intentions of the deceased client, Berot, are not in dispute. Maigetter freely concedes that Berot wanted the co-op apartment to pass to Kyriakopoulos, and that she expressed that wish to him several times. Eastburn testified similarly. Kyriakopoulos seeks to prove that Maigetter at some point entered an agreement with Berot to transfer ownership of the co-op apartment to Kyriakopoulos—an alleged agreement in line with Berot's undisputed wishes. Kyriakopoulos's claims thus rest not on proving Berot's intentions but on proving *Maigetter's*. We do not doubt the District Court's conclusion that the disputed emails in some sense discuss and further Berot's intent. But application of the testamentary exception when the decedent's intentions are not in dispute again pushes the traditional boundaries of the exception.

Finally, we come to the question certified for our review: the "who"—to whose privilege does the testamentary exception apply?

Our answer is that any testamentary exception adopted by the Pennsylvania Supreme Court would apply only to communications between the deceased client and his or her attorney. That answer accords with historical practice. The parties, like the District Court, have uncovered no precedent applying the exception to third-party communications made after the client's death. That answer also pays heed to a foundational prin-

10

ciple of the exception itself. As discussed above, the testamentary exception is grounded in part on a theory of implied waiver. *Glover*, 165 U.S. at 407–08; *Blackburn*, 70 U.S. at 194. The client enjoys the privilege over his communications with his attorney, and the client has the power to waive that protection. The attorney-client privilege survives the death of the client; so too does the power of waiver. The testamentary exception impliedly effects that waiver to further the deceased client's intentions. *Swidler*, 524 U.S. at 404–05.

But whatever those intentions, and however vital they may be to resolving a legal dispute, they do not grant the deceased client the power to waive a privilege held by others. "The attorney-client privilege belongs to the client, who alone may waive it." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007), *overruled on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 110 (2016); *see also Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("[I]n leaving to the client the decision whether or not to waive the privilege . . . we provide certainty that the client's confidential communications will not be disclosed unless the client takes an affirmative step to waive the privilege."); *Burkert v. Equitable Life Assurance Soc'y of Am.*, 287 F.3d 293, 295–96 (3d Cir. 2002) (surveying Pennsylvania practice and finding that only the client has standing to invoke the attorney-client privilege); 42 Pa. Cons. Stat. § 5928 ("In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial *by the client*." (emphasis added)).

The emails at issue, occurring after Berot's death, were between Maigetter and Eastburn. The privilege is thus

11

Maigetter's to assert and Maigetter's to waive. Maigetter has asserted the privilege, and neither Berot nor Kyriakopoulos may impliedly or explicitly waive it for him. "The question of who has the right to enforce or waive the [attorney-client] privilege . . . is [not] answered simply by determining who has an interest in carrying out the intention of the Decedent." *Burkert*, 287 F.3d at 295. Rather, the implied waiver principle underlying the testamentary exception limits its application to communications between a deceased client and his or her attorney.

Kyriakopoulos offers little in response. He acknowledges the implied waiver aspect of the testamentary exception, but argues that the exclusive focus of the exception is the decedent's intentions—all "why," no "who." That understanding of the exception would, if not swallow the rule, at least take a hearty bite out of it.[2]

The legal system depends on frank, open communication between clients and attorneys; the protective shield of the attorney-client privilege is the guarantor of those communications. Permitting that privilege to be waived by another party

---

[2] Kyriakopoulos argues in the alternative that the emails are discoverable under a joint representation theory: that Eastburn was in some sense still representing both Berot and Maigetter at the time that Maigetter contacted Eastburn following Berot's death. That same premise shades many of Kyriakopoulos's arguments related to the testamentary exception. We reject that theory. The joint-client exception to the attorney-client privilege applies only to communications made during the joint representation. *Pittsburgh Hist. & Landmarks Found. v. Ziegler*, 200 A.3d 58, 61 n.2 (Pa. 2019). But the emails at issue were sent after Berot's death, and therefore after Eastburn's joint representation ended.

would undermine it, perhaps fatally. As Chief Justice Rehnquist said in *Swidler*, "[a] 'no harm in one more exception' rationale could contribute to the general erosion of the privilege, without reference to common-law principles or 'reason and experience.'" *Swidler*, 524 U.S. at 410 (quoting Fed. R. Evid. 501). Applying the testamentary exception in any circumstance where a decedent's intentions are at issue, regardless of whether the decedent was a party to the disputed communications, would represent a significant expansion of the exception's traditional, narrow bounds. That step is fraught with peril, and we decline to take it.

\* \* \*

For these reasons, we will vacate the District Court's order compelling production of the twelve Maigetter-Eastburn emails and remand for further proceedings.

13