**In re Thevaos Estate**

*Joseph P. Green,* for caveator.
*Terry J. Williams,* for Kish Bank.
*H. Amos Goodall,* for Goodall & Yurchak.
*John A. Snyder,* for Penn State University.

GRINE, *J.,* February 8, 2010—Presently before the court is a petition brought by G. Philip Thevaos (caveator) requesting that the court overrule objections to a subpoena brought by Goodall & Yurchak P.C. Caveator claims that Goodall & Yurchak have, in their possession, documents relating to changes in the decedent's estate which may or may not show that he was either unduly influenced or that he did not have the requisite capacity to make such changes.

## DISCUSSION

Decedent Deno Thevaos was the uncle of caveator Philip Thevaos. Deno had no children at the time of his death. In early 1996, Deno consulted with Louis Glantz, Esquire to draft a will, a living trust, and a durable power of attorney. Deno was 76 years old when he went to Glantz for these documents. The 1996 will listed Philip and Philip's father, Theo Thevaos as co-executors. The 1996 will directed that, upon Deno's death, the co-executors pay Deno's debts and then deposit the residue of the estate into a living trust (the 1996 trust). The eventual distribution of the trust was dependent on whether Deno's wife Theola Thevaos predeceased Deno. If Theola survived Deno, the trust would provide her income for life, and then upon Theola's death the bulk of the assets remaining in the trust were to be distributed

to Philip. If Theola predeceased Deno, then all of Deno's assets would be transferred into a credit shelter trust and then be distributed to Philip.

A durable power of attorney was also prepared by Glantz in 1996. The power of attorney gave Philip and Theo the power to manage Deno's affairs, including the power to make financial and medical decisions on his behalf. A living will was also prepared which gave Theola the power to make medical decisions on Deno's behalf if he was in "a terminal condition or in a state of permanent unconsciousness." Philip was named as the substitute surrogate under the living will if Theola was unable to perform the duties enumerated.

In 2002, Deno suffered from a stroke. He also suffered from Alzheimer's disease and dementia. In 2005, through their attorney at Rayback, Blanarik & Green, Theola and Deno changed their power of attorney and gave Omega Bank the power to make financial and medical decisions for Deno. The boilerplate language included in the 2005 power of attorney revoked "any prior power of attorney that [Deno] had executed prior" to the one he was currently signing.

In March 2006, Theola changed her power of attorney and removed Omega. Shortly thereafter Theola contacted Glantz and enquired as to whether Glantz could remove Omega as Deno's power of attorney. Glantz refused to change Deno's power of attorney, stating that he did not believe that Deno currently had the necessary mental capacity to do so.

In 2007, Theola and Deno met with Attorney H. Amos Goodall. Goodall prepared two new power of attorney documents for Deno; a limited power of attorney and a general power of attorney. The limited power of attorney named Norma Keller as Deno's agent and also gave her the ability to change his general power of attorney. The general power of attorney named Theola and Kishacoquillas Valley National Bank as Deno's agents. Goodall also created what was referred to as an "amended and restated revocable living trust" for Deno. The new trust, instead of giving the residue to Philip upon Deno's death, gave the residue of Deno's estate to The Pennsylvania State University. In fact, the 2007 trust gave nothing to Philip. Norma Keller signed the trust on Deno's. behalf.

Theola died on August 26, 2008 and Deno died on February 18, 2008. On February 19, 2009 Philip filed an informal caveat. On February 26, 2009 Philip filed a formal caveat. The grounds listed in the formal caveat include:

"(4) The said writing is expected to be offered for probate by Frances Stephenson and by reason thereof certain material questions are in controversy between caveator and the said Frances H. Stephenson and Kishacoquillas Valley National Bank.

"(a) Whether at the time of the alleged execution of the writing Deno Thevaos Ed.D. was of sound and disposing mind, memory and understanding; and

"(b) Whether execution of the instrument was procured by the undue influence of Theola Thevaos, Frances H.

Stephenson, Kishacoquillas Valley National Bank or any other individual or entity; and

"(c) Whether Theola Thevaos, Frances H. Stephenson, Kishacoquillas Valley National Bank,or any other individual or entity occupied a position of confidential relationship with Deno Thevaos Ed.D."

Caveator served Goodall & Yurchak with a notice of intent to serve a subpoena to produce documents and things for discovery on June 30, 2009. Caveator requested correspondence between Goodall & Yurchak and Deno and Theola. Additionally, caveator requested correspondence between Goodall & Yurchak and third parties related to this matter such as Penn State, Kish Bank, physicians and other people. Goodall & Yurchak provided a brief two sentence objection to the notice sent by caveator. The objection read:

"Amos Goodall, Esquire, objects to caveator's request for production of documents directed to Amos Goodall, Esquire, in that the material and knowledge held by Amos Goodall, Esquire, is privileged, confidential and beyond the scope of discovery. Non-privileged information has been provided by Kishacoquillas Valley National Bank in its responses."

42 Pa.C.S. §5928 states "[i]n a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." Goodall & Yurchak has failed to communicate to caveator as to what materials they currently possess

relating to Deno's estate. Without being informed as to what documents and other materials Goodall & Yurchak currently possess related to Deno's estate, the court is unable to assess whether they are generally protected by the attorney-client privilege. "While the attorney-client privilege is statutorily mandated, it has a number of requirements that must be satisfied in order to trigger its protections. First and foremost is the rule that the privilege applies only to confidential communications made by the client to the attorney in connection with providing legal services." *In re Estate of Wood,* 818 A.2d 568, 571 (Pa. Super. 2003). The court, however, believes that Goodall & Yurchak is in possession of communications between their firm and third parties with whom they do not hold an attorney-client relationship. The court finds that these documents should be shared with caveator.

Caveator also claims that any materials held by Goodall & Yurchak relating to Deno's estate are discoverable pursuant to a testamentary exception to the attorney-client privilege. Caveator was unable to cite to any Pennsylvania cases where a testamentary exception was created. Caveator was able to cite to several sources which discussed the testamentary exception and a United States Supreme Court case where the court addresses the purpose of the testamentary exception to the attorney-client privilege. Specifically in *Swidler & Berlin v. United States,* 524 U.S. 399 (1998), the Supreme Court discusses the rationale behind allowing a testamentary exception. They point out that such an exception is allowed because it "furthers the client's intent." *Id.* This court believes that a testamentary exception is proper in

this case as well as in any case where a deceased holder of the attorney-client privilege is suspected of having been unduly influenced to change the planned disposition of his estate after his death. Therefore, the court finds that the testamentary exception applies in this case. The court believes that any documentation related to the change in Deno's estate near the end of his life and after suffering a series of medical setbacks can only go to show what Deno's intent was, and whether he was able to clearly communicate what he desired for his estate. Additionally, it is possible that any documentation provided by Goodall & Yurchak will either eliminate or affirm caveator's belief that Deno may have been unduly influenced to make changes to his estate which eliminated his natural heir completely. The scope of this exception, however, is limited to communications made between Deno and Goodall & Yurchak.

## ORDER

And now, February 8, 2010, the court overrules Goodall & Yurchak P.C.'s objections to caveator's subpoena and orders that Goodall & Yurchak provide caveator with the documents requested in caveator's subpoena pursuant to the following parameters:

(1) All communications between Deno Thevaos and Goodall & Yurchak.

(2) All communications related to the estate of Deno Thevaos between Goodall & Yurchak and third parties with whom Goodall & Yurchak does not maintain an attorney-client relationship with regards to the estate of Deno Thevaos.

(3) All other documents which are otherwise discoverable in the normal course of litigation.

Goodall & Yurchak will provide, to the court, a log of any additional items related to the estate of Deno Thevaos which Goodall & Yurchak believes are not discoverable pursuant to the above order. The court will make any necessary rulings upon receipt of such a log.